JOHN IRA DIXON ET AL. *v.* GREENE COUNTY ET AL.

1. CHANCERY PRACTICE. *Injunction. Accomplished facts.*

An injunction is inapplicable to restrain things already done.

2. SUPERVISORS, BOARD OF. *Contracts. New Courthouse.*

The contract of a board of supervisors for the building of a new courthouse is to be found in the orders on the minutes of the board, and such writings, like plans and specifications, as are referred to therein; and a contract so evidenced cannot be affected by a writing subsequently executed by the contractor and the members of the board.

3. SAME. *Advertisements. Code* 1892, § 340.

If the advertisements for bids to build a courthouse state that it is to be built according to the plans and specifications adopted by the board for the erection of the house, it will be sufficient under code 1892, § 340, providing that such advertisements shall distinctly state the thing to be done.

4. SAME. *Right to reject all bids.*

An advertisement for bids to build a courthouse, under code 1892, § 340, providing that contracts for public works for the counties

shall be let to the lowest bidder, will not be invalid because it gives notice that the board of supervisors reserves the right to reject all bids.

5. Same.  *Alteration of contract.    Delegation of power.*

A board of supervisors cannot empower a superintending board to alter or amend its contract; the board cannot delegate such power, but must act itself.

6. Same.  *Compromises.    Variation of plans.*

If a contractor, in building a courthouse, vary from the plans and specifications, made part of his contract, it is competent for the board of supervisors to compromise and adjust the matter with him, and pay for the house actually erected.

7. Same.  *Case.*

If a contract for the erection of a courthouse provide for a slate roof, and the contractor put a tin roof on the house, the board of supervisors can be enjoined from paying for the building until the matter is adjusted or the contractor is required to complete the house as agreed.

From the chancery court of Greene county.

Hon. Nathan C. Hill, Chancellor.

Dixon and others, appellants, were the complainants in the court below; the county of Greene and others, appellees and cross appellants, were defendants there. At its March term, 1898, the board of supervisors of Greene county adopted a plan and specifications for building a new courthouse. The order adopting the same was in these words: "Ordered by the board that plans and specifications presented by W. N. Baxter, agent of F. B. & W. S. Hull, for building a courthouse for Greene county be received and adopted, and the clerk of this court is hereby authorized and required to advertise for bids for building said courthouse in accordance with said plans and specifications. Sealed bids will be received till 12 m., the first Monday in April, 1898, at which time the bids will be opened and the contract awarded to the lowest responsible bidder. The board, however, reserves the right to reject any and all

bids.     All bidders are required to inclose with his bid a certified check for five hundred dollars, showing good faith in said bid.     If the contract be awarded to F. B. & W. S. Hull, it is understood that no charge be made for plans and specifications, but should contract be awarded to any other person, then the board agrees to pay three per cent. on the amount of contract for the use of said plan and specifications.''

The specifications were quite lengthy, but it is not deemed necessary to copy the same into this report.     They contained the sentence quoted in the opinion as from the contract.     Nothing was done under the order for some time, but at its May, 1898, term the board again directed the clerk to advertise for sealed proposals for the building of a new courthouse, and the clerk made the following advertisement, viz.: '' Bids will be received till 12 o'clock M. the first Monday in June for building a courthouse for Greene county, Miss., in accordance with plans and specifications on file in the clerk's office.     All bids are to be addressed to the president of the board of supervisors of said county.     The board reserves the right to reject any and all bids.     All bidders will be required to file with their bids a certified check for five hundred dollars as security of good faith on their part. By order of the board, May 2, 1898.     Sam McLeod, clerk.'' At its June term, 1898, the board accepted the bid of F. B. & W. S. Hull, and awarded them the contract to build the courthouse for the sum of nine thousand five hundred dollars, and thereupon the following writing (called the memorandum in the opinion) was executed by the members of the board assuming to act in behalf of and for the county, viz.:

'' *Contract.*—Agreement entered into between F. B. & W. S. Hull, of Jackson, Mississippi, and the county of Greene, by the board of supervisors, the sixteenth day of June, 1898.

'' Party of the first part to well and sufficiently provide all necessary materials, tools and appliances used in the proper construction and completion of the courthouse to be erected on the courthouse lot at Leakesville, according to plans and speci-

fications on file in the office of the chancery clerk, the same being part of said contract.

"The right is reserved to said second party to make any changes or alterations it may deem expedient or necessary in said plans and specifications, or in either of them, or the character or quantity of the work to be performed under this agreement, whether of material or labor, increasing or diminishing the whole cost of the work; and in the event such changes or modifications should be determined upon or ordered, first party shall execute the work accordingly, and the value thereof to be added to or deducted from the original contract price hereinafter named shall be determined by a fair and reasonable valuation to be fixed and agreed upon, in writing, between the parties hereto before proceeding therewith; or, in case of disagreement, then the valuation shall be fixed by arbitration, as hereinafter provided, and no claim shall be made against said second party for any extra work or material unless ordered by said second party, and the price thereof fixed and determined as above stipulated.   Said second party shall appoint a superintendent or committee to judge as to the quality and character of the material and work required by this agreement, whose duty it shall be to inspect and to report upon the work and material during the construction of said building, and make and furnish estimates of the material furnished for and the labor performed thereon from time to time, and should any material be furnished therefor or work be done thereon which, in his or their opinion, is not in accordance with the requirements of the plans and specifications therefor, it shall be his or their duty to notify said first party thereof in person or by written notice forwarded by registered mail to its proper address, unless he or they and said second party, or its agent or subcontractor, can agree upon the subject in controversy or settle by competent authority.   And should said superintendent or committee permit any part of the work on said building to be completed without objecting thereto and giving notice to

---

---

the said first party as aforesaid, it shall be considered and taken the same as an approval thereof, and the said first party shall not thereafter be held responsible therefor, nor be required to reconstruct the same without full and adequate compensation therefor.

"Should any misunderstanding or disagreement arise between the parties hereto in relation to any part of the work or material provided for or embraced under the terms of this agreement, or in relation to any of the stipulations hereof, which cannot be settled between themselves, the matter in controversy shall be referred to two disinterested arbitrators, one of whom to be chosen by each of the parties hereto, and in case of disagreement between said two arbitrators they shall jointly choose a third and their decision in the matter shall be final and binding upon both parties. The expense of such arbitration to be borne equally by both parties.

"Upon final completion of the work the second party shall examine the same, and, if completed according to contract, shall immediately accept the same and make final settlement with said first party therefor as provided and stipulated.

"The foregoing contains all the understandings and agreements had between the parties hereto in relation to the erection and completion of said building and its equipments and appurtenances.      " Signed      Greene County,

     " By Alex. Walley, *President,*

     " M. J. F. McLendon,

     " C. P. Eubanks,

     " J. D. Turner,

"*Members of the Board of Supervisors of Greene County, Mississippi.*

     " Signed      F. B. & W. S. Hull,

     " By W. N. Baxter, *Con. Agt.*

"Attest: Dan. McLeod,

     "*Chancery Clerk of Greene County, Mississippi.*"

Soon after the award of the contract the Messrs. Hull began work. They removed the old courthouse from its site and were proceeding in the erection of a new house thereon when the complainants, citizens and taxpayers of the county, filed the bill in this case and obtained a preliminary injunction restraining the Hulls from removing the old house and the board of supervisors from paying them for erecting the new one.

Many of the allegations of the bill upon which the complainants based their claim that the contract between the county and Messrs. Hull was void were denied by the answers and were disproved. The defendants moved a dissolution of the injunction. Before its hearing the complainants insisted that the Hulls were in contempt of court for a violation of 'the injunction in that they had proceeded with the erection of the new house on the old courthouse site after being enjoined from removing the old house. The court below did not so adjudge, but proceeded to hear their motion, as well as the motion of the other defendants, to dissolve the injunction and decreed its dissolution in part, but retained the injunction in part, as shown in the opinion of the court. From this decree the complainants appealed to the supreme court and the defendants prosecuted a cross appeal.

*McIntosh & Rich* and *C. H. Wood*, for appellants.

The board adopted the plans for the new courthouse with full knowledge that defendants, Hull, would become bidders for the contemplated work. The contract was subsequently awarded to defendants, Hull. After the award was made, the board of supervisors and Messrs. Hull entered into written contract, setting out in detail the terms and conditions upon which the work was to be done. Complainants, as soon as they were informed of the execution of the contract, caused to be prepared and forwarded to the clerk of the chancery court of Greene county the bill in chancery praying an injunction against the performance of the contract. Upon the receipt of

the bill, the clerk of the chancery court refused to file the bill or issue the ordinary process thereon, but returned it to the counsel who had prepared it.

The defendants, Hull, after their subcontractors and agents had been informed that an injunction was being sought, entered upon the work of removing the old courthouse and the construction of the new building, and continued the work without stoppage until late in the month of February, 1899. The building of the new house was prosecuted after the writ of injunction was issued on the twentieth day of December, 1898, and after defendants, Hull, and their agents and subcontractors had knowledge and after they had filed an answer to the bill. On the twenty-fifth day of February, 1899, defendants moved to dissolve the injunction on bill and answer. The complainants filed a motion to strike out the motion to dissolve by defendants, Hull, because they were in contempt of the order of the judge of the supreme court, upon whose fiat the injunction was issued, in prosecuting the work of erecting the new house on the courthouse lot at Leakesville after knowledge of the order and issuance of writ of injunction, and after they had filed an answer. The chancellor denied the motion, and rendered a decree dissolving the injunction as to Messrs. Hull, and awarding them attorney's fees as damages. Complainants excepted to the decree and appeal.

" Besides the personal and pecuniary inconvenience to which a party subjects himself by a contempt of the ordinary process of the court, he places himself in this further predicament, viz., that of not being in a position to be heard in any application which he may be desirous of making to the court." 1 Daniels Chancery Practice (5th ed.), 505; *Ex parte Hamilton,* 51 Ala., 65; *Fosters* v. *Holly's Administrators,* 49 Ala., 592; *Jacoby* v. *Goetter, Weil & Co.,* 74 Ala., 429; *Mussina* v. *Bartlett,* 8 Porter (Ala.), 277.

The chancellor erred in the decree dissolving the injunction

against F. B. & W. S. Hull, and in awarding said defendants attorney's fees as damages.

The contract between Greene county and the defendants, Hull, was executed in violation of numerous provisions of the several statutes regulating, defining and limiting the powers of boards of supervisors. Complainants insist that said contract was void for the following reasons:

(1) The published notice failed to state that the contract would be awarded to the lowest bidder. Chapter 17 of the code of 1892, embracing §§ 272 to 344, both inclusive, regulating, defining and limiting the powers of boards of supervisors, constitute one body of law and must be construed _in pari materia._ All of the several sections of the code from 272 to 344, both inclusive, must be construed in such manner as will give effect to all of them and to all parts of each of them. 23 Am. & Eng. Enc. L., 311 and note; Sutherland on Stat. Con., secs. 283, 288; Endlich on Interpretation of Statute, sec. 43; _Clements_ v. _Anderson_, 46 Miss., 598; _Scott_ v. _Searles_, 5 Smed. & M., 25.

The notice published by the board of supervisors prior to the award of the contract to the defendants Hull omits entirely the statement that " the contract will be awarded to the lowest bidder." Section 341 is imperative that the notice shall contain this statement, and § 344 expressly provides that "all contracts made in violation of any of the provisions of law shall be void." The contract was therefore made in violation of an express provision of law, and is void. .

Sections 340 and 341 prescribing the method of making contracts by boards of supervisors are mandatory and must be strictly construed and literally followed. Code 1892, § 344; _State_ v. _Vice_, 71 Miss., 912; _Koch_ v. _Bridges_, 45 Miss., 247; _Supervisors_ v. _Arrighi_, 54 Miss., 668; _Paxtom_ v. _Baum_, 59 Miss., 531; _Seal_ v. _Donnelly_, 60 Miss., 658; _Oglesby_ v. _Sigman_, 58 Miss., 502; _Perkins_ v. _Carraway_, 59 Miss., 222; _Love_

v. *State*, 8 So. Rep., 465; *Keller* v. *Toulme*, 7 So. Rep., 508; Elliott on Roads and Streets, 413.

The character of the notice prescribed by § 341, as a condition precedent to the execution of the contract by the board of supervisors, was arbitrary. The requirements that the notice shall state "the contract will be awarded to the lowest bidder" is not idle and meaningless. It is required for manifest reasons of public policy and was intended to secure to the taxpayers of the county the lowest cost compatible with efficiency of the execution of any public contract. It was intended to prevent the board of supervisors from indulging any considerations of personal friendship or prejudice in awarding the contract. The statute not only requires the notice to state that "the contract will be awarded to the lowest bidder," but also determines who the lowest bidder is. The notice published not only violated the letter of the statute by omitting the statement that the contract would be awarded to the lowest bidder, but it grossly ignored the spirit of the statute in another important particular. It contained the statement that "the board reserves the right to reject any and all bids." If the bidding has been fairly conducted and the lowest bidder tenders the bond required it is its duty, specially enjoined upon the board, to accept the bid, and there is no authority for the arbitrary right of rejection reserved by the terms of the published notice. Code 1892, § 344.

(2) The published notice failed to briefly indicate the work to be done. The requirement of § 341, that the notice "shall briefly indicate the work to be done," is manifestly a most wholesome provision, and was intended to inform the public, to some extent, of the character of the work. The statement contained in the notice, "A Courthouse for Greene County," conveys the idea that a house of some character is wanted, but it contains absolutely no indication of the "work to be done" in constructing the house. As to whether the house was to be of wood, brick or stone, the public is left

wholly to conjecture.    Construing §§ 340 and 341 *in pari materia*, it is clear that the notice in this case fails to comply with the statutes.    Section 340 requires the notice to "distinctly state the thing to be done;" § 341 requires a brief indication of the "work to be done."    If the notice had contained a statement that the building was to be "a two-story brick, slate-roof courthouse," the thing to be done would have been distinctly stated, and the work to be done would have been briefly indicated.

(3) The specifications adopted and the contract entered into by the board of supervisors reserve the right to the superintending board to change the plans and specifications indefinitely and without limit.    The specifications contained this clause: "The superintending board reserves the right of making any alterations or additions to the drawings they may see proper, without in any way affecting the validity of the contract, the value of such alterations to be added to or be deducted from the amount to be paid at market prices.    The contractor will not be allowed any additional compensation unless he receives written authority from the superintending board."    The board of supervisors, in the exercise of the powers to build a courthouse, must adopt plans and specifications and determine the materials and dimensions of the structure.    This is a personal duty that cannot be delegated directly or indirectly.    The board can only contract in the mode provided in the statute, and when the contract is once executed it can only be altered or changed in the same manner.    Code, § 294, *Benton County* v. *Patrick*, 54 Miss., 240.

(4) The contract provides that the failure of the superintendent or the committee to object, in writing, to defective work or material, in the manner provided in the contract, shall be taken and treated as an approval by the superintendent or committee absolutely binding upon the board of supervisors. This stipulation in the contract is in open defiance of several specific provisions of law.    The duty of the superintendent en-

joined by statute is "to take care that proper materials are furnished and the work faithfully performed according to contract." This is the extent of the superintendent's authority. He can neither directly or indirectly change plans or specifications. Code, § 294. The board is not bound by any act of the superintendent or committee, and is without authority to pay for any public work until it is performed according to "specifications" and the "work completed." Code, § 342.

(5) The contract provides that any controversy between said board of supervisors and the contractors relative to the work done or material used in the construction of the building which cannot be adjusted by the parties shall be referred to arbitrators, whose decision shall be final. This provision is contrary to numerous provisions of the law found in the statutes regulating and limiting the powers of boards of supervisors, and renders the contract void.

All claims against the county must first be presented to the board of supervisors, and, if disallowed, the claimant may appeal to the circuit court. Code of 1892, § 292. This method of settling claims against the county is exclusive of all others and negatives the right of the board to refer disputed claims or controversies to arbitration. *Lawrence County* v. *Brookhaven*, 51 Miss., 68. The board cannot consent to any other method of trial. *Bridges* v. *Supervisors*, 57 Miss., 252; Sutherland on Stat. Con., sec. 399; *Meyers* v. *Gibson*, 46 N. E. Rep., 914. The duties imposed by law upon the board of supervisors are personal duties and cannot be delegated. *Mann* v. *Richardson*, 66 Ill., 481.

*Denny & Woods* and *J. E. Alderman*, for appellee, and cross appellant, Greene county.

We submit that the proper notice was given to build a courthouse even under § 340, but no notice was required, as the subject of erecting courthouses is regulated solely by section 294. Section 340 provides for the letting of contracts for

public works amounting to over $50, "not otherwise specially provided for." The erection of courthouses is specially provided for in § 294, which provides a complete scheme in itself. It embraces the whole subject, and § 340 has no application. Sections 294 and 340 are not *in pari materia.* The doctrine that statutes *in pari materia* are to be taken together and construed as one act is resorted to in cases of doubt, and is never applicable where a statute is plain and unambiguous. The rule, as we understand it, is that, where one section of a statute treats solely and especially of a matter, that section prevails in reference to that matter over other sections in which only incidental reference is made thereto. · *Long* v. *Culp,* 14 Kan., 413; *Griffith* v. *Carter,* 8 Conn., 565.

Section 340 was in the code of 1871 as § 1388, yet the court upheld an appropriation by the board of supervisors of Noxubee county involving $500, for the planting of shade trees, where it is manifest that that section was not followed. *Allgood* v. *Hill,* 54 Miss., 666.

But again, there was in this case a substantial compliance with § 340. While the notice did not state that the contract would be let to the lowest bidder, yet in point of fact it was let to the lowest bidder. Complaint is made that the notice was vague, indefinite, and uncertain. But we think the notice could not have been fuller or clearer without setting out *in extenso* the plans and specifications, which under our statute it was never intended to be done. For the length of notice for contract work is by our statute expressly limited to one square, or twelve lines. The notice required under § 340 (which has no application to cases like the one at bar) was such notice as would advise contractors for bridges when bridges were to be built, contractors for plumbing when plumbing was to be done, contractors for furniture when furniture was needed, etc. And even under § 340 what could be plainer and more intelligible than the words "for building a courthouse according to plans and specifications on file in the chancery

clerk's office?" As we understand the law, only such information is required to be given as will enable bidders to bid intelligently. *Detroit* v. *Hosmer*, 44 N. W. Rep., 622.

Next, it is complained that changes might be made at the option of the board as the work progresses. Necessary changes can be made without reletting the contract. It would be most nonsensical to say that necessary changes could not be made after the contract was let. The location of a window or a door might have to be changed. Would it be necessary to let the window or door go in at the wrong place, and then advertise for bids to tear it out and place it elsewhere? We take it not. And we are glad to say we have an utterance on this point. Simrall, C. J., said in the Patrick case, page 244: "No authority exists in the contractors or commissioners to make alterations or additions unless it is delegated by the board." By which it is clear that the commissioners, if the authority is "delegated by the board," can make changes, but this is considering a thing that may never happen. The written memorandum is not a part of the contract, for the board can only contract by an order on its minutes. *Crump* v. *Colfax County*, 52 Miss., 110; *Bridges* v. *Clay County*, 58 Miss., 817; *Board* v. *Patrick*, 54 Miss., 244; *Boone* v. *Boone*, 58 Miss., 820; § 287, code of 1892.

The only error by us assigned on our cross appeal is to the action of the chancellor in declining at this time, or "Now," to dissolve the injunction as to the board of supervisors, and allow attorney's fees as damages, on the ground that the retention of the injunction until the completion of the courthouse could work no injury to Greene county. That no damage will be done the defendant in an injunction suit is, indeed, a new ground to us for either the granting or retention of an injunction. We find no authority to support a ruling of this kind. And if this court will take judicial notice of the fact that the April term of the circuit court of Greene county has been pretermitted on account of the unfinished condition of the court-

house, on which the Hulls have stopped work, this court will very readily see that great and grave harm is being done to Greene county and her citizens.

*Calhoon & Green*, for appellees and cross appellants, the Messrs. Hull.

This court will note that the Hulls are not enjoined, nor sought by the bill to be enjoined, from proceeding to build. The bill charges that the publication of notice for bidders failed to expressly say that the contract would be let to the lowest bidder. The advertisement, we submit, does show it to any sensible mind, but, if we be in error, the advertisement is not required to be so made under our law as to courthouses and jails. No case holds that advertisement is necessary. The talk in *Paxton* v. *Bowen*, 59 Miss., 539, is pure dictum. The mind of the court was on another matter and this question has never been considered by this court. We add on the sufficiency of the advertisement as it stands—and not even this distinction in *Paxton* v. *Bowen* is against its sufficiency—that the statute is highly penal and a substantial compliance is enough. *Telegraph Co.* v. *Clark*, 71 Miss., 157; *Friar* v. *State*, 3 How., 422; *Mastornardo* v. *State*, 60 Miss., 92.

The bill complains that the advertisement did not state the size and kind of structure, the kind of material, and the work to be done. It is not required to do all this by code § 341 any fuller than it was done, and anything fuller could not have been done within the limit of that section.

The "contract" referred to in the bill is not that made, but a mere null and void memorandum agreement signed by the members of the board and F. B. & W. S. Hull. The valid contract by the board in session is in the record. But there is nothing in the memorandum agreement enforceable by law which is objectionable.

There is no power in an appellate court to review the ruling of an inferior tribunal refusing to punish in any way for contempt. There was no power to review such rulings where the lower

court did punish for contempt until code of 1880, § 2316, code of 1892, § 138. *Shattuck* v. *State*, 51 Miss., 50. Until the statutes mentioned the supreme court could not even discharge one from prison under sentence for contempt.

The chancellor could not conclude that the board would accept discolored brick or a tin roof instead of a slate roof unless upon terms, and the board may clearly make terms to compensate for variations from the contract if there should be any. *Board* v. *Patrick*, 54 Miss., 240. Any other view would be nonsense and tie down the board in a Procrustean bed to the letter of a contract which might ruin the county. Suppose a tin roof finally presented, may not the board, upon terms, accept it? It is common knowledge that a tin roof thirty-five miles from a railroad is the right roof, one that can be mended at home, while the crack of slate by hail calls for the importation of operatives from the cities.*

The decree rendered is strangely conflicting and erroneous in that it dissolves the injunction as to the Hulls, thereby compelling the Hulls to go on and construct the building; then that the court did not decide that the board of supervisors could not, by order on its minutes, make changes on the contract, but that the injunction restraining the board from paying for the building under the allegation of the invalidity of the contract, and, as amended, the defective compliance with the terms of the invalid contract, be retained. Thus the contractor must perform but the board must not pay, though it has the power to contract by orders on its minutes.

Argued orally by *J. C. Rich*, for appellants, and by *Marcellus Green*, for appellees and cross appellants, the Messrs. Hull.

WHITFIELD, J., delivered the opinion of the court.

We notice only what seems necessary to decision. The Hulls were not enjoined from building, but from removing the old courthouse and interfering with it. Their removal of it and interference with it had been accomplished before they had

any notice that the writ had issued.    The decree dissolving the injunction as to them is, for that reason, affirmed.    We do not deem it necessary to decide whether § 294 of code 1892 is to be construed by itself or in connection with §§ 340, 344, though the language of the court in *Benton County* v. *Patrick*, 54 Miss., 240, and *Paxton* v. *Baum*, 59 Miss., 539, would seem to indicate that they should be construed together.    The notice is substantially sufficient.    The plans and specifications were on file and were referred to, from which all detailed information could have been obtained.    The only express contract made by the board was to be found in the order on its minutes, and the plans and specifications made part thereof by reference. The arbitration clause is in the memorandum and is no part of the contract.    But in the contract it is stipulated as follows: "The superintending board reserves the right of making any alterations or additions to the drawings they may see proper without in any way affecting the validity of the contract.    The value of such alterations to be added to or deducted from the amount to be paid at market prices.    The contractor will not be allowed any additional compensation unless he receives written authority from the superintending board."

This provision is a nullity.    The board of supervisors cannot delegate powers intrusted to that board, to be by that board alone exercised, to any superintending board.    *Benton County* v. *Patrick*, 54 Miss., 240.

It is clearly shown that the roof was the most important single item in the contract, and was to be of the best Bangor slate. The contractors themselves say that it "above all" must be dealt with as per contract.    And yet a tin roof is shown to have been put on, and there is nothing in the evidence to warrant the argument that it was merely provisional.    But we think there is a failure to show any fraud in the case, and we do not see why the way to a just settlement of the differences between the parties is not plain and easy.    We think the chancellor, under all the facts in evidence, acted wisely in retaining the injunction against

the board of supervisors prohibiting them from making any payment to the Hulls under the contract as it stands. But, under the law as announced in *Benton County* v. *Patrick*, the board and the Hulls can make an amendment of their original contract, substituting a tin roof for a slate roof, on such terms as they may wisely deem just, such contract amendment to be spread on the minutes of the board; or the board may require the Hulls to go forward and complete their contract as they agreed to do as to a slate roof, if this is by the board deemed best for the county. The Hulls cannot complain of being made to put on the very roof their contract called for.

We do not think the form of the decree, which practically perpetuates the injunction, is correct. We therefore reverse the decree retaining the injunction against the board of supervisors, in so far only as it is made perpetual, and remand the case with instructions to the court below to discharge the injunction whenever either of the two things indicated above shall have been done.

*So ordered.*