## MARION COUNTY *v.* HENRY C. FOXWORTH.

1. BOARD OF SUPERVISORS.   *Public contracts.   Extra work.   Code* 1892, § 340.   *Advertisement.*

   Where the board of supervisors had contracted for the erection of a bridge, after due advertisement under Code 1892, § 340, requiring all contracts for public works, not otherwise specially provided for, where the contract exceeds fifty dollars, to be awarded to the lowest bidder after advertisement as therein specified:

   (*a*) The board is empowered, irrespective of its cost, to contract for extra work, pertaining to a necessary part of the bridge, found necessary during its construction, without further advertisement; but

   (*b*) Fenders or clusters of piles above or below the bridge, totally disconnected therefrom, are not a necessary part of it, and the board cannot contract for their erection, at a cost exceeding fifty dollars, without advertising therefor under said code section.

2. SAME.   *Minutes.   Reference to a writing.*

   An order of a board of supervisors awarding a contract may make such reference to a writing, read and approved by the board and executed for and in its behalf by its president, as to constitute the writing a part of the contract, although it is not recorded on the minutes of the board.

FROM the chancery court of, first district, Marion county.

HON. STONE DEAVOURS, Chancellor.

Foxworth, appellee, was complainant, and Marion county, appellant, defendant in the court below.   From a decree in complainant's favor, defendant appealed to the supreme court.   The opinion of the court states the facts.

*Mounger & Mounger,* for appellant.

The pretended contract upon which appellee bases his claim to escape the forfeiture and recover the full contract price was signed by Lewis, president of the board of supervisors, not en-

tered on the minutes of the board of supervisors, and the county was not bound by the writing signed by Mr. Lewis. There was only one contract made by appellee with appellant, Marion county, to wit, the contract entered upon the minutes of the board, accepting appellee's bid to build the bridge for $16,000 upon condition that he finish and deliver it by September 15, 1897.

It would not have been an order on the minutes of the board if the instrument of writing referred to in the order had been filed with the clerk. There is no provision of law for the filing of such instrument, as there is for filing plans and specifications for bridges. Moreover, there is no allegation in the bill of complaint that the instrument signed by Lewis is the one referred to in the order of the board of supervisors.

The board of supervisors could not delegate to Lewis the authority or power to make a contract with appellee or to release him from the time limit. Code 1892, § 344. *Benton County* v. *Patrick,* 54 Miss., 240; *Dixon* v. *Green County,* 76 Miss., 809.

An express contract must be shown. 7 Am. & Eng. Enc. Law (2d ed.), 946, and this express contract must be shown by an order on the minutes of the board of supervisors. *Benton County* v. *Patrick,* 54 Miss., 340; *Dixon* v. *Greene County,* 76 Miss., 794; *Groton Co.* v. *Warren County,* 80 Miss., 214.

There is no question of ratification here. The only question is whether the contract was originally made by order on the board's minutes. The appellee cannot recover $1,110 withheld and refused him by the county because the only contract entered into between him and appellant bound him to complete and deliver the bridge by the 15th day of September, 1897, which, according to the pleadings, agreement of counsel and proof, in the case he did not do within 111 days of that time, exclusive of an extension of time granted by the board.

The bill alleges that by virtue of a proposition, contained in a letter to the board, the board of supervisors contracted with appellee to do the extra work and furnish the extra material. The

answer admits that the board entered into a verbal contract with appellee to do the extra work, but denies that any such order was entered on the minutes of the board.

The letter to the board submitted a proposition to do certain extra work at certain prices, but the order of the board, the only one on the subject, simply recites "that the plans and specifications submitted by the contractor be adopted." There is nothing in the order to show an agreement on the part of the board to pay appellee anything for doing extra work or for extra material. This extra work, as it is termed, consisting as it does of building a fender for the protection of the bridge above and a rest pile below for the end of the bridge to rest on when swung open after completion, was public work of the county separate from the building of the bridge, and should have been let out to the lowest bidder, according to Code 1892, § 340.

There is an agreement of counsel that this extra work was not advertised. The bill of complaint alleges that, as a matter of law, it was not necessary to advertise it, and it appears from the depositions that it was not advertised.

Then, there was no advertisement of the extra work and no contract on the minutes of the board of supervisors with appellee to do this extra work, both of which was necessary. Code 1892, § 344. *Benton County* v. *Patrick,* 54 Miss., 240; *Dixon* v. *Greene County,* 76 Miss., 794; 80 Mass., 214.

*J. N. Flowers,* assistant attorney general, on same side.

In the first place, we venture to suggest that the rule has not been firmly established by this court that a board of supervisors can amend or alter, even by an order duly entered upon its minutes, a contract required by law to be advertised and let to the least responsible bidder. The rule is recognized in *Groton Co.* v. *Warren County,* 80 Miss., 214; but that decision is based upon *Dixon* v. *Greene County,* 76 Miss., 794, and *Board* v. *Patrick,* 54 Miss., 240; and the two Mississippi cases cited in the

Warren county case refer back to *Carroll* v. *Tishomingo County,* 28 Miss., 38.

In the last named case the court said: "Having authority to make the contract in the first instance, they (the board) had authority to modify or vary its terms either as to the work, the payment of the money, or as to the person to receive the payment." But in that case the court was discussing a claim based upon a contract which did not require publication. The board of police had authority to make, and did make, the original contract in the same way by which the court said it could be amended or altered. This decision was cited with approval in Crump's case, 52 Miss., 107; but in this case the claim was based on a contract not required to be made after public notice given.

The decision in Patrick's case, 54 Miss., 340, was also upon a claim based upon a contract for building a court house, and the law did not then require that notices should be given before such contracts were let, though the law was different as to bridges. See §§ 1368, 1369, 2376, code of 1871.

The first case in which this court applied the law announced in these former decisions to a claim based on a contract required by law to be advertised and let publicly to the lowest bidder is *Dixon* v. *Greene County,* 76 Miss., 794, and the decision in that case is based upon the decisions in the earlier cases above cited without any reference to or consideration of the fact that the said former decisions were on contracts not required by law to be let publicly to the lowest responsible bidder after notice given as provided.

Nor do I find that this suggestion was made to the court in the Dixon case or in the more recent one from Warren county.

The truth is, this law found its way into our decisions when contracts requiring no advertisement were under consideration. It can be reasonably said that in such cases the board can amend or alter its contract in the same manner in which the law requires the contract to be made in the first instance. This is

very plain law and ought to be applied to such contracts as the one now in hand. The board had authority to make the contract in the first instance in a manner provided by law, and it can amend or alter this contract only in the same manner.

It may be reasonably supposed that the law requiring all public works to be let to the lowest responsible bidder after three weeks public notice by advertisement in a newspaper published in the county was enacted to cure evils resulting from careless business methods on the part of the county boards. The plans are now required to be on file when the advertisement is made, and the contract must be let to the lowest responsible bidder. If such requirements are carried out to the letter there is little room for collusion, for the taxpayers can see what work is to be done and can judge as to the good faith, good business and wisdom of the contract made. But this safeguard is destroyed if the board has the power, after one advertisement is made and the contract let, to proceed without further notice to make any change that may be agreed upon between the board and the contractor.

It was never intended by the lawmakers that the original contract properly entered into after legal notice, should satisfy the law as far as public notice is concerned for all time, and that after this is properly done, then the door is open for as many contracts in connection with the original one to be entered into as the judgments or whims or the interest of the board and contractor may dictate.

It is not intended that the advertisement should be treated as a mere propitiation to the law in this regard as a mere license to act freely, as simply a disposition of an embarrassing restriction. We do not think that it was ever intended to be held by this court that the original contract entered into should constitute a nucleus around which other contracts can be indiscriminately clustered. If this be true, then no special attention might be given to the first contract, because the work really to be done depends upon the changes and additions to be made as the work

progresses. The advertisement removes the handicap, and the board is then left to do as it pleases. The public letting of the contract would be simply a grand stand play to satisfy the people and their law.

Questions of raising funds are always considered in connection with such contracts, and are always a factor in the mind of the taxpayer in determining whether he shall object to the issuance of bonds. If it is the law that the contract can be changed without public notice given simply by an order spread on the minutes of the board, then the amount of the bid will furnish no measure of the cost of the work except as fixing the minimum.

Nothing is better settled than that the board of supervisors, in acting for the county, is an agent acting under special and limited authority; that every person dealing with the board as the county's representative is charged with notice of the special and limited powers under which the agent acts. Every such person is charged not only with notice of the extent of the agent's authority, but also of the manner in which such powers must be exercised. Such persons must know at their own peril whether the board is complying with the law in making its contracts.

It is also settled that the board has no authority except that given by the statute; that the statutes must be strictly construed as against the boards.

*N. C. Hill,* for appellee.

The order of the board, made at the December term, 1896, when the bid of appellee was accepted, recites that "the president is specially authorized to release said contractor, or his assigns, from the time limit in said contract for the completion of said bridge as he may deem fit and proper, etc.," and the president of the board testified that acting under this authority he did release the contractor in 1897 from the time limit and waived the $10 per day forfeit before the work was begun.

The chancellor has passed on the evidence on this proposition and has found in favor of the contractor, and his findings will

be upheld unless it clearly appears from the record that he is not sustained by the facts. Most assuredly this does not appear.

Is the county liable to appellee for the cost of the additional extra work done on the bridge?

A provision of the contract as made between the county and Foxworth is, "and it is further agreed that in case any change, modification or additions shall be made in the plans and specifications of said bridge, or any change in the location thereof shall be made, then and in that event, additional time for completion and additional compensation shall be agreed to in writing between the parties."

As to the extra or additional work to be done the record shows that the contractor, before the original plans for the bridge were submitted to the secretary of war for approval, informed the board of supervisors in writing, they being in session, of the needful changes in said plans, stating particularly the things necessary to be done, and giving the amount of the materials and the price of same, and stating that he would do the work at those figures.

The proposition was received by the board while in session, and ordered filed with the bridge plans. Thereupon the board "approved" said plans and proposition to do the work, they then making and spreading upon the minutes the following order: "It is ordered by the board that the plans proposed by the bridge contractor to pile center and east pier of bridge across Pearl river be adopted by the board, also erection of fenders above the bridge and rest piles below the bridge, all of which is shown in drawing and specifications presented and ordered filed with the old plans and specifications."

The foregoing proposition of the constructor stating in writing the necessary work to be done, and the amount, kind, and price of materials required to do it, and stating that he would do the said work for the said amount, and the order of the board "adopting" the same is a substantial compliance with the law. It shows clearly that the board understood what was to be done,

and what it would cost to do it, and when they "adopted" the plans thus proposed they also "adopted" his offer to do it at the price named.

Could the board contract for the extra work to be done without advertising it and letting it to the lowest bidder?

There can be no doubt but that the board had authority under the law to contract with the appellee to do the work at a certain price without first advertising the new work to be done, and letting it to the lowest bidder. If needful changes in the original plans could not be made without first advertising it and letting it to the lowest bidder, then I submit that the board would be powerless to protect the county against inferior or insufficient plans, although the want of necessary changes might prove fatal to the public work to be done; such changes, however, in the original plans can be made by the contractor and the board in writing spread on the minutes of the board, and the compensation of the contractor increased or diminished therefor as might be agreed on between them for said work. *Dixon* v. *Green,* 76 Miss., 794; *Groton Bridge Co.* v. *Warren County,* 80 Miss., 214.

TRULY, J., delivered the opinion of the court.

The board of supervisors of Marion county, at a meeting regularly held in December, 1896, awarded to appellee a contract to construct a steel bridge across Pearl river near Columbia, in that county, for the sum of $16,000, to be paid on the 1st of January, 1898. The order recites that the bid of Foxworth to furnish and construct said bridge according to the plans and specifications on file was accepted by the board, and "the president hereof authorized to sign on behalf of this board any and all contracts (which contract for the building of such bridge was and is approved by this board in open session, and signed by the president for the board by its direction)." The said order further provided that the president of the board was "specially authorized to release said contractor or his assigns from the time limit in said contract for the completion of said

bridge as he may deem fit and proper, and all according to the terms of said contract read to, and thereby fully approved by, said board." The contract referred to in the order contained this provision: "It is further agreed that in case any change, modification or addition shall be made in the plans and specifications of said bridge or any change in the location thereof shall be made, then and in that event, additional time for completion and additional compensation shall be agreed to in writing between the parties hereto. Nor shall the contractor be held responsible for unavoidable delays caused by the United States authorities failing to approve the location of the bridge, or in the transportation, or by the elements, mobs or enemies of the government, strikes of working men in the employ of the contractor or his assigns, or of manufactories under contract with him for the furnishing of materials, for such acts of providence, or delays over which they have no control." Subsequently, and before work was actually commenced upon the structure, the contractor notified the board, on June 8, 1897, that certain extra work was necessary for the stability and protection of the proposed bridge, and that this extra work consisted of certain piles to be driven in the center and end cylinders at a location shown by plans which accompanied the communication, which entailed the use of additional lumber, concrete, spikes, etc. Further, a fender for the protection of the center pier, to extend from the center cylinder up stream far enough to completely protect the upstream end of the bridge when swung open, and a cluster of piles to be built below the bridge for the protection of the downstream end of the bridge when swung open; and the end cylinders of the bridge were to be increased in size as shown by the plans. This proposal stated definitely the price which was to be charged for the material to be used in each particular portion of the proposed extra work. This proposal was, by order of the board, filed with the bridge plans, and the following order was placed on the minutes of the board: "It is ordered by the board that the plans proposed by the bridge contractor to pile center

and west pier of bridge across Pearl river be adopted by the board. Also erection of fenders above bridge, and rest piles below the bridge, all of which is shown in drawing and specifications presented and ordered filed with the old plans and specifications of the bridge." The plan and location of the bridge were not approved by the United States authorities until July 1, 1897. Subsequently, at its September meeting, the board, by order, extended the time for the completion of the bridge until the 1st day of December, 1897. The bridge was not completed until 111 days thereafter. After the bridge was completed and accepted by the board the contractor filed his account before the board for $19,215.40; $16,000 being the contract price for the bridge and $3,215.40 being the extra work, including the fenders both above and below the bridge. The board refused to pay any of the account for extra work, and deducted $10 per day for the 111 days' delay in the completion of the bridge after the 1st day of December, 1897. Thereupon the appellee filed his bill of complaint in the chancery court, setting up these facts, and averring that the delay was caused by the contingencies mentioned and provided against in his contract, and that therefore the board had no right to penalize him by reserving this $1,110; further, that the bill for extra work was in accordance with the proposal for the same which had been adopted by the board, and that all of such extra work was absolutely necessary for the proper construction of the bridge, and to insure its safety and stability after it was erected. The board of supervisors, in their answer, admitted the awarding of the contract, but contended that the delay in the completion of the bridge was not caused by any of the contingencies mentioned in the contract, and, as to the extra work, averred that the same was not necessary for the proper construction of the bridge, or for its stability and protection, and further, that the county was not bound to pay for said extra work, because there was no contract agreement to pay therefor duly and legally made; that the order adopting the plans for the extra work was not an acceptance thereof, nor did

it constitute a contract to pay for the same; that this extra work was in fact the nature of another piece of work; and that the board could not have contracted for such work without first advertising for sealed bids as required by law. It was admitted that no advertisement was made in reference to the extra work. On final hearing the chancellor decreed that the appellee was entitled to recover the $1,110 withheld by the county as a penalty for failure to complete the bridge at the date contracted for, and that he was entitled to recover the full amount charged for the extra work. From that decree the county prosecutes this appeal.

The question here presented is what power the board of supervisors of a county has in reference to additional or extra work thought necessary for the completion of any public work already contracted for. This subject has been treated of by this court on several occasions heretofore, and we see no reason for changing the rule announced in previous adjudications, so far as applicable to the state of the case here made. In every public work of any considerable magnitude it must often, if not invariably, happen during the progress of the building that some deviations from the plans and specifications as originally adopted will be found necessary; some difference in the nature and character of the foundation, some change of location deemed advisable, will inevitably demand modifications, to a greater or lesser extent, in the original plan. This is peculiarly the case in constructing bridges over streams. A trivial mistake in the measurement of the channel to be spanned, a slight change of location, a difference in the nature of the soil in which the foundation must be imbedded, will each require certain absolutely necessary changes, which must be made in order to insure a secure and stable structure. The board of supervisors, as a body, had the right to contract for such changes and additions without going through the formality of an advertisement for sealed bids. The exigencies of the occasion, the fact that these defects can only be discovered while the work is in actual progress, render it im-

practicable, if not impossible, to delay until such advertisements should be made. To require that each change found necessary or incidental to the construction of the public work should by itself be awarded, after advertisement, to the lowest bidder, would give rise to many complications and inconveniences, which would militate against the best interests of the country. It might often happen that the contractor who had been awarded the original contract would not be the lowest bidder for each particular portion of the extra work, and it would probably happen that contractors antagonistic to each other, and whose interests would be inimical, would be engaged upon the same structure at the same time, and thus "confusion worse confounded" would arise, should it become necessary for the board of supervisors to endeavor to hold either contractor for a default on his special contract. The existence of this power is expressly recognized in *Dixon* v. *Greene County*, 76 Miss., 809, 25 So. Rep., 665; and *Groton Bridge Co.* v. *Warren County,* 80 Miss., 218, 31 So. Rep., 711; and to this doctrine we adhere, as being the true interpretation of the law. Boards of supervisors, without previous advertisement, have the right to contract for any extra or special work found necessary during the construction of any public work, where the same appertains to a permanent or necessary part of the structure originally contracted for. Such contracts, like all other contracts made by boards of supervisors, must be evidenced by orders duly entered on their minutes, or by papers in such orders referred to and made a part thereof. In the instant case we find that the contract for the extra work was so awarded to the contractor. The proposal of the contractor stated with certainty and full detail the extra work which, in his judgment, was necessary in the construction of the bridge, and stated with clearness the price to be charged for each specified portion. This proposal, with the accompanying plans and specifications, was by order of the board, duly entered upon its minutes, adopted, and the paper filed with the other plans and specifications of

the bridge. This was, on the part of the board, an acceptance of the proposal of the contractor, and bound the county to pay for the extra work upon the bridge at the figures named therein. The fact that the order of the board did not specifically state the contract price, in dollars, arose from the fact that it was impossible for either party to say with any degree of accuracy what the extra work would eventually amount to. It stated, however, what work was to be done, and what price was to be charged for the labor employed and the materials used, and left the ascertainment of the amount due to be arrived at by a simple calculation after the completion of the work. This was the making of a definite and enforceable contract by both the contracting parties. But the proposal of the contractor embraced more work than was absolutely necessary for the completion of the contract which had been awarded to him, and included the erection of other structures not necessary or pertaining to the bridge. The fenders or clusters of piles to be driven both above and below the bridge, and totally disconnected therefrom, did not come within the class of work which the board was authorized to award without a compliance with § 340 of the revised code of 1892. This was another and entirely different piece of public work, and if, in the judgment of the board, it was necessary for the public interest that the same should have been constructed, advertisement should have been made and the work awarded to the lowest bidder, as required by law. So far as relates to the fenders above and below the bridge the contract of the board was void, and the appellee cannot recover for such work or the materials furnished therefor. Nor was he, in any view, entitled to compensation for removing a tree near the bridge. If necessary, the removal was to protect his own work, and was incumbent on him under his original contract.

This disposes of the main question involved in the case. It is conceded by some of the counsel for the appellant that the decree of the chancellor awarding to appellee the $1,110 retained by the county was correct, but, as other counsel urge us to pass·

on that question, we will say that as the contract in this case between appellant and appellee was read and adoptd by the board of supervisors in open session, and as the same was specifically referred to in the order awarding the original contract, it became a part of that contract by the same rule of law which made the plans and specifications of the bridge a part of the contract. The contention that this was simply a memorandum, and not a contract, is based upon a misconception of the language of the decision in *Dixon* v. *Greene County, supra*. But a critical analysis of that decision will demonstrate that it was there held that those papers specially referred to in the order of the board, and constituting a part of the same transaction, were in fact acts of the board. If any other rule applied the contractor could not be held at all to any compliance with the plans and specifications of the work awarded to him, for the reason that architect's plans and specifications, from their very nature, cannot conveniently be entered on the minutes, yet they are invariably and rightly considered an integral part of the contract awarded thereon. Therefore, as the contract in the case was duly and legally entered into, and its conditions binding upon each party, it was a question of fact rightfully submitted to the chancellor to decide under the circumstances in evidence here whether the county had the right to withhold the amount of penalty provided for by the contract between appellant and appellee, or whether the delay was caused by one of the exempted contingencies. He decided adversely to the county on this ground, and we think this decision correct.

Inasmuch as it is impossible for us, from this record, to say with certainty what proportion of the bill for extra work was for material and labor applied for the bridge proper, and what proportion is claimed on account of the erection of fenders above and below the bridge, we must reverse the case so that this may be ascertained in the court below, and appellee given a decree only for so much of said items as is due for work performed and material used on the bridge itself. The amount so found

to be due for such extra work, and the $1,110 wrongfully withheld, is the sum of his rights in this matter.

*Reversed and remanded.*