## NORTHERN DRAINAGE DISTRICT *v.* BOLIVAR COUNTY.

[71 South. 380.]

1. BRIDGES. *Construction by counties. Liability of drainage districts. Counties. Contracts. Entry on minutes. Power of legislature.*

   Prior to January, 1912, the drainage commissioners organized under chapter 1906, had no authority to do any work on natural water courses, section 13, chapter 196, Laws 1912, validated the work theretofore done on natural water courses, and the expenditures made in furtherance of such work, the same law also imposed upon the counties the duty to replace bridges at the expense of the county; under this law the validation of the work was retrospective, while the requirement that counties should replace bridges at their own expenses is prospective; so that the county could recover from the drainage district the cost of replacing bridges previous to the passage of the act.

2. COUNTIES. *Contracts. Entry on minutes of board of supervisors.*

   A contract made by an order of a board of supervisors which is not entered upon its minutes is as ineffectual as if it had never been entered into, such a contract has no legal existence.

3. DRAINS. *District. Power of legislature.*

   A drainage district is a creature of the legislature and the legislature has the right to prescribe the terms of its organization, or it could refuse to organize it at all.

APPEAL from the circuit court of Bolivar county.

HON. W. D. CUTRER, Special Judge.

Suit by Bolivar County against the Northern Drainage District. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Thomas S. Owen,* for appellant.

*Green & Green* and *Fontaine Jones,* for appellee.

COOK, P. J., delivered the opinion of the court.

This action was instituted by board of supervisors of Bolivar county against the appellant drainage district

for the purpose of recovering the amount expended by the board of supervisors for removing and replacing public bridges which crossed the drainage canals and ditches of the drainage district.

The defendant pleaded the general issue and two special pleas. The first special plea averred that the board of supervisors agreed with the drainage commissioners that, if they would not assess the public roads of the county, the board of supervisors would remove and replace all bridges on the public roads where the canals crossed the roads. The second special plea averred that the bridges mentioned in the declaration were built across natural water courses; and that defendant was not liable for the costs of replacing the same. Demurrers were filed to the two special pleas, and were sustained by the court.

At the trial it was agreed in an agreed statement of facts that the bridges were built at the expense of the board of supervisors; that they were built prior to January 1, 1912; that all of the bridges were built on public roads and across natural water courses, that is, where the public roads cross natural water courses which were being dredged by the drainage commissioners for the two drainage districts; that all of the bridges were on public roads of the county.

Appellant insists that the court erred in sustaining the demurrer to the second plea. This contention is based upon the fact that prior to January, 1912, the drainage commissioners organized under chapter 39, Code 1912, had no authority to do any work on natural water courses, citing *Ex parte Drainage Commissioners of Leflore County,* 100 Miss. 821, 57 So. 223.

We think section 13, ch. 196, Laws 1912, validated the work theretofore done on natural water courses, and the expenditures made in furtherance of such work. But it is said that the same law that validated work on water courses also imposed upon the counties the duty to replace bridges at the expense of the county. We believe

that the validation of the work was retrospective, while the requirement that counties should replace bridges at their own expense is prospective. Undoubtedly the obligation to pay for replacing bridges had been incurred, and in contemplation of the statute this was an expenditure made in good faith which the statute legalized.

As to the first special plea, we think the court below was right in sustaining the demurrer to same. It is very doubtful whether the board of supervisors were authorized to enter into the agreement set up in the plea, even had the agreement been spread at large upon the minutes of the boards. But it is not contended that the contract was made by an order upon the minutes, and, if it was not, it was as ineffectual as if it had never been entered into. The so-called contract has no legal existence. But it is stated in the brief for appellant that the real and important question for this court's decision is this:

"Independent of this position, the real question which it is important to decide is this: Does a public highway or a railroad acquire such an easement over a natural water course by condemnation or otherwise, that is superior to the natural easement of the adjacent land-owners and the public, or is the right acquired by the easement of the public highway or the railroad subject to the superior right or rights of the riparian landowner in the natural water course to use it for drainage purposes, for which nature created it?"

As we view this question, we may hold with appellant that the right of the riparian landowner is superior to that of the county to construct bridges across natural water courses, and yet this would not dispose of the real question presented by this record.

It is true, in a sense, the drainage commissioners represent the riparian owners. In other words, the riparian owners have, by authority of law, pooled interests by organizing themselves into a drainage district—a municipal corporation. It is only by authority of the legisla-

ture that this organization is made possible, and it is clearly within the power of the legislature to impose conditions upon this grant of power. The riparian owners did not possess the right of eminent domain, the power of taxation, and many other powers given to drainage districts, and so it was that the legislature imposed the burden of paying for the cost of removing and replacing county bridges where it became necessary to remove same in the prosecution of the work the legislature empowered drainage commissioners to do.

Of course, the legislature could have refused to provide for drainage districts at all, and it follows that it could authorize the forming of such districts upon such terms as to it seemed best.

*Affirmed.*