## Shell et al., Com'rs., v. Monroe County.

[88 South. 162, No. 21650.]

1. HIGHWAYS. *Highway commissioners held to have no control over funds derived under statute.*

   Highway commissioners appointed under the provisions of chapter 145, Laws of 1912, and its amendments (Hemingway's Code, section 7158 et seq.), have no control over the funds derived under the provisions of that statute, except that they must be paid out by the board of supervisors on the recommendation of the commissioners.

2. BRIDGES. *Supervisors' failure to use certain fund held not to invest highway commissioners or taxpayers with right to recover money paid from special fund.*

   The failure of a board of supervisors to comply with the provision of chapter 176, Laws of 1914 (Hemingway's Code, section 7177),

that "it shall be the duty of the board of supervisors out of the county fund to build all bridges in districts coming under this act the cost of which exceeds twenty-five dollars, and to keep the same in repair," does not invest either the highway commissioners or a taxpayer with the right to sue for and recover from the county the amount of money paid by the board for such bridges, out of the special fund derived from the sale of bonds issued or taxes levied under the statute.

APPEAL from chancery court of Monroe county.

HON. A. J. McINTYRE, Chancellor.

Suit by J. L. Shell and others against Monroe County. Bill dismissed, and complainants appeal.  Affirmed.

*McFarland & Holmes,* for appellant.

The legislature which gave this road district the power of raising money by taxation, can appropriate money raised by the district for one purpose, to another; the same is true of a county.   The converse would also be true, and the legislature has the right to say the funds of the district shall not be expended for bridges, but that the county shall pay for the construction and maintenance of bridges. By the Acts of 1914, charter 176, section 20, this is what the legislature has said, and it is mandatory on the county to pay for the construction and maintenance of bridges in the fourth supervisors road district out of county funds. The courts have frequently held that the legislature has the right to consolidate political sub-divisions and add to or take away financial burdens; in this case it is nothing more than the legislature adding the burden of bridge construction and maintenance to the county, and taking it away from the smaller sub-division the road district.  See 27 L. R. A. (N. S.) 1147 & notes; 12 C. J., sec. 628 et seq.; *Portwood* v. *Montgomery County,* 52 Miss. 523; L. R. A. 1915D, 274 & notes.

On the question of liability for money expended on bridge construction prior to March 28, 1914, we call the attention of the court to the fact that the construction of

roads and bridges in the district was a continuous one, mapped out at the beginning and carried through as a whole, so far as the work could be done with the funds available, and while some of these bridges had been constructed and payment made on them, yet the work of building bridges on the roads designated by the commissioners and the board of supervisors to be improved was still in progress, and would be until the funds of the district were expended or the work on the whole system completed; so that the Acts of 1914, chapter 176, passed while work was still in progress, applies to bridges built or to be built in the district. This road and bridge work was to be paid for in instalments, and there was certainly no debt due for the bridges not constructed on March 28, 1914; such being the case, on this date the road district owed nothing for bridges uncompleted, and after that date the legislature said the work should be paid for by the county and not the road district. On the question of whether or not money falling due in instalments is a debt by a political corporation or not, we refer the court to 37 L. R. A. (N. S.) 1063, where a very full discussion of this question will be found.

So we now come to the only question in the case as we see it, namely, as to whether or not the road district has the legal right to bring a suit against the county. We are unable to find any authority directly in line on this question; but applying the general rule that where one party or political corporation is made liable to another for some demand or claim, then necessarily an action will lie against the one and in favor of the other, whether there is a statute allowing such a suit or not, so long as same is not prohibited by law. As expressed in 15 C. J. 664, note 50: "Where a county is by statute made liable for a given demand, an action against it will lie therefor, although the statute does not in express terms authorize the bringing of the suit. "In this case, the Act of 1914, makes the county liable for the cost of constructing and maintaining bridges, therefore it must follow that if the county refuses to pay for same, an action will lie against it. We respectfully

submit that the action of the court in sustaining appellee's demurrer was error, and this case should be reversed and appellant allowed a chance to recover the money due by the county.

*Leftwich & Tubb,* for appellee.

A casual inspection of the good roads act, chapter 149, Acts of 1910, as well as the amended act, chapter 176, Acts of 1914, discloses no right whatever in the administrative body of the commissioners in charge of the bonded roads in supervisors district number four to sue or be sued, and they are without such power. They are of course mere administrative officers and agents of the board of supervisors. But this matter will be referred to in a later paragraph more fully. The bill is entirely silent as to when these concrete bridges were contracted for but it must be of course taken more strongly against the pleader, and the amended bill of particulars shows the first payment for a bridge on November 1, 1919, and it necessarily follows that these bridges were legally contracted for not later than 1911, perhaps before. This is admitted in the brief of counsel for appellant; on page 2 they say: "The construction of roads and bridges in the district was a continuous one, mapped out at the beginning and carried through as a whole."

So taken altogether it is very plain that the contract for all the bridges was let, and most of them constructed and paid for, before section 20, Acts of March 28, 1914, was written into the law and the other soon thereafter. Counsel in their brief seems to admit that the only possible liability of the county would be for three hundred and thirty-eight dollars and seventy-five cents expended for the repair of one bridge and forty-seven hundred dollars expended after the 28th day of March, 1914. See top of page 2 of the brief. It being admittedly true that all these bridges were contracted for by the commission and nearly all of them paid

for before the act making the county liable became a law, the county certainly can't be made liable by an *ex post facto* statute, which reads as follows:

"Sec. 20. It shall be the duty of the board of supervisors out of the county fund to build all bridges in districts coming under this act, the cost of which exceeds twenty-five dollars, and to keep the same in repair."

This statute is certainly prospective and not made retroactive by the legislature if it were necessary to do so, which we need not now discuss. The initiative in the plan and construction of these concrete bridges was taken by the commission of the fourth district. That district wanted concrete bridges and culverts. It is perfectly plain that while the county might approve the construction of concrete bridges and culvert in the fourth district with money borrowed by the Fourth district when the board of supervisors as a whole would not undertake the expense of erecting concrete bridges throughout the county with the county's money; in fact the county's revenue might make it impossible to do so. The bill don't even recite that the board of supervisors even approved the expenditure of this money by the commissioners of the fourth district of Monroe county, but avers that the fourth district through its commissioners expended the money. As all things must be presumed to have been legally done, we may be shut up to the conclusion, as there is no averment to the contrary that the board entered an order approving this action of the fourth district commissioners, but certainly that does not conclude the whole county to be responsible for a system of bridges and culverts in concrete which might be entirely impracticable, out of the county revenues as a whole.

The counsel cite *Portwood* v. *Montgomery County,* 52 Miss. 523, to the fact that when an addition is made to a county that the property in the addition may be by the legislature held liable for the debts theretofore contracted. Of course the state legislature is supreme in these matters in so far as they are not limited by the constitution. Here

in the instant case the legislature does not require the county to pay for bridges erected and contracted for before the act was passed, and since under the constitution the board of supervisors has full jurisdiction of roads, ferries and bridges, the legislature might be very much limited in its powers if it were to attempt to do so. A sufficient argument is that it didn't do it. And laws are certainly not retroactive if not made so in their terms, even where that is possible.

We fail to see where the author's note to *Hogan v. The Commissioners,* 37 L. R. A. (N. S.) p. 1063, applies to this point or has any relation to the concrete question here raised.

III. The fourth district of Monroe county is not vested by any statute with which we are familiar with the right and power to either sue or be sued. It is useless to enlarge on the proposition thoroughly well established in Mississippi for many years, that counties, they being vested with designated parts of the state sovereignty and a *fortiori* sub-division thereof, cannot sue or be sued except when expressly authorized by a statute. *Braham v. The Board of Supervisors,* 54 Miss. 363; *Redditt v. Wall,* 55 So. 45, 34 L. R. A. (N. S.) 152; *Grenada City v. Grenada County,* 115 Miss. 831; *Mississippi Centennial Exposition Company v. Luderback,* 86 So. 517; *Freeman v. Lee County,* 66 Miss. 1.

The Mississippi Centennial Exposition case decided only a few weeks ago is in harmony with the policy of the state that no subdivision thereof can sue or be sued unless the power so to do is literally pointed out by the statute. In *Freeman v. Lee County,* this court held that the county couldn't be sued where only a part of the county is interested, which caused the enactment of section 310, Code of 1906, of section 3683, Hemingway's Code, and there the language is: "Suit may be brought in the name of the county where only a part of the county or all its inhab-

itants are concerned, and where there is a public right of such party to be vindicated."

But the statute expressly fails to authorize any precinct or district or subdivision to sue at all, much less to sue the county. It would be an anomalous situation to give the county the right to sue itself. "The clay cannot say unto the potter, why hast thou made me thus?"

This state and states everywhere create precincts and districts and subdivisions of counties for administrative purposes; such as elections, erecting roads, school houses and the like, but no power was ever presumed or implied authorizing such subdivisions of counties to sue or be sued, it being presumed everywhere that county financial organizations, the board of supervisors and the legislature will take care of the subdivisions. See pp. 415 and 416, C. J.

IV. We are not unmindful of section 309, Code of 1906, section 3682, Hemingway's Code, providing that a county may sue and be sued, but that section does not authorize the suit in question. Here is a district of the county given power to issue bonds and build roads to suit itself, using material to meet its own need. It may be a supervisor's district or parts of two or more districts or parts of one or more counties. This district was authorized to be formed and its commission created by the board of supervisors. The commission voluntarily goes forward and builds certain kinds of bridges, cuts its garment according to the cloth—contracts and pays for them as the law and the board authorizes it to do, and after this is done by force of a statute afterwards enacted, asks its master, the county, to reimburse it for these monies lawfully paid out for the erection of these bridges and culverts; and this, too, after waiting a period of seven years or more from the time the bridges were contracted for and more than four years after all the money was admittedly paid out and after the act under which they sue was enacted. The Commissioners of the fourth district arrogate to themselves the authority to sue the master, the county, and their learned

counsel fail to anywhere point to the authority so to do. We have failed to find any such authority and certainly it would create tremendous confusion and conflict of authority to imply that every subordinate administrative body of a county could sue the county itself, forsooth for something that didn't exactly please it. Confession and anarchy would certainly result from a rule like this.

Smith, C. J., delivered the opinion of the court.

The appellants, who were highway commissioners of Monroe county, appointed under the provisions of chapter 145, Laws of 1912, and its amendments (Hemingway's Code, section 7158 et seq.), exhibited an original bill in the court below against Monroe county by which they seek to recover something over sixteen thousand dollars, alleged to have been paid by the board of supervisors of the county out of the special fund for the building of roads derived under the provisions of the statute hereinbefore referred to for bridges built under the provisions of the statute, the cost of each of which exceeded twenty-five dollars instead of out of the county funds, as provided by section 20, chapter 176, Laws of 1914 (Hemingway's Code, section 7177). A demurrer to this bill was sustained and the appellants, who sued as highway commissioners, requested permission to amend their bill so as to indicate that they sued both as commissioners and as individual taxpayers. This request was denied and the bill was then dismissed.

A highway commission appointed under the provisions of chapter 145, Laws of 1912, which now appears as chapter 176, Laws of 1914 (Hemingway's Code, section 7158 et seq.), is simply the agent of the board of supervisors in the building and maintenance of the roads constructed under that statute, and it has no control over the funds derived either from a sale of bonds issued or from taxes levied under the provisions of the statute, except that such funds must be paid out by the board of supervisors on the recommendation of the commissioners. The appellants.

neither as commissioners nor as taxpayers, have any right to the custody of the funds obtained from the sale of bonds issued or taxes levied under the provisions of the statute, all of which must be held by the county treasurer until paid out by him on warrants issued under the orders of the board of supervisors.

One of the amendments to chapter 145, Laws of 1912, by chapter 176, Laws of 1914 (Hemingway's Code, section 7177), is the provision therein that—"It shall be the duty of the board of supervisors out of the county fund to build all bridges in districts coming under this act the cost of which exceeds twenty-five dollars, and to keep the same in repair."

This amendment applies to all bridges built after its adoption, but the failure of the board of supervisors to comply therewith does not invest either the commissioners or a taxpayer with the right to sue for and recover from the county the amount of the money paid by the board for such bridges out of the special fund derived from the sale of bonds issued or taxes levied under the statute. Whether a board of supervisors can be coerced into paying for such bridges out of the county fund, and the procedure for so doing, is not presented for decision by this record.

*Affirmed.*