## CORINTH TO GULF HIGHWAY ET AL. *v.* CAROTHERS & CO.

[92 South. 696, No. 22343.]

COUNTIES. *Supervisors can only contract as provided by law; and contract must be evidenced by order on minutes; board cannot bind county for contracts not let on advertisement to lowest bidder; board cannot consent to decree having effect of making new contract not in accordance with statute.*

The board of supervisors of a county can only contract as provided by law, and such contract must be evidenced by an order entered upon its minutes. Section 361, Code of 1906 (section 3734, Hemingway's Code), requires certain contracts to be made only on advertisement and to the lowest bidder, and as to such contracts the board cannot bind the county by a contract unless the statutory conditions are complied with; and the board cannot, as to matters coming under the purview of this statute, consent to the entry of a consent decree in a suit in chancery having the effect of making a new contract and bind the county as to such contract not made in accordance with the statute, and a decree so entered is void.

APPEAL from chancery court of Alcorn county.

HON. A. J. McINTYRE, Chancellor.

Suit by Carothers & Co. against the Corinth to Gulf Highway and others, in which there was a consent decree. Subsequently a petition was filed in supplementary proceedings to compel the county to pay a balance of the retained percentages on theory that board had breached its contract embodied in its decree, and consequently plaintiff was entitled to all retained percentages. Decree for plaintiffs, and defendants appeal. Reversed and remanded.

*W. C. Sweat,* for appellant.

An individual, who is *sui juris,* can make any kind of contract and enter into any kind of agreement, and such contract, or agreement, if not contrary to law, would be binding upon him but the county can make no agreement, unless it is specifically authorized by law so to .do; and the board of supervisors cannot bind the county, except in the manner prescribed by statute, and must be able to point out the particular statute which authorizes the doing of the thing or the making of the contract before it can be binding upon the county. The attorney for the county, who is employed by the board of supervisors, could certainly no more bind the county than could the board itself; and the fact that he appears in the suit could not give any validity to a decree otherwise void.

It is true that a person *sui juris* can enter a consent decree which will bind him, and his counsel may do likewise; but the county is not *sui juris* in the sense in which that term is ordinarily used, but is impotent to act, except as specially authorized by statute. The county cannot be bound by its board of supervisors or by its attorney, except by an order duly entered upon its minutes, and after all the formalities required by the statute are complied with which authorizes the board to take the action and its entry upon the minutes.

*Robins & Thomas,* for appellee.

In the first inquiry that the court makes in its suggestion for additional briefs, is what jurisdiction and power did the chancery court have to enter this decree and what power had the board of supervisors and highway commissioners to consent to such decree to bind the county. As we understand it the board of supervisors are the very parties to bind the county; and as to the question as to what jurisdiction the chancery court had to enter the decree, if the pleadings in the original case were before the court, it would be apparent that all the matters disposed of in that decree were incidentally, if not actually, in issue in the original suit.

The original suit was brought by Carothers & Company for the purpose of recovering the retained percentage and damages on the part of the county for breach of their contract in failing to furnish the contractors material as required by their contract, and in failing to receive and pay for all the work done and to relieve Carothers & Company, the contractors, from doing any further work on the contract. It was especially set out in the decree and in the pleadings that there was a part of the contract on which no work had been done. The defendants the real parties in interest, the road district, and the board of supervisors, who as a board can act only for the county and road district, and the county itself through its legally retained attorney, Mr. Sweat, defended that suit and set out that the road district was not liable because it was claimed that the complainants in that case first breached the contract and prayed for damages against complainant, and denied the right to recover the seven thousand three hundred dollars retained percentage, or any part of it. So there was before the court in that suit the whole question of who was entitled to the retained percentage, who was entitled to damages, who was liable for the completion of the road, and how it should be completed. The whole matter was before the chancery court, and the chancery court had jurisdiction of all the parties by the appearance of those parties through their attorneys. We know that Mr. Sweat will not deny that he was the attorney for the county, and as attorney for the county, he had the direction of this particular road district affairs, as well as other road districts of the county, and that he appeared by virtue of his authority as attorney and counselor of the county of Alcorn, and the county of Alcorn acting for the road district, known as the Corinth to Gulf Highway.

The chancery court, as a court of general jurisdiction and especially as a court of equity, would have had the inherent power with the subject-matter before it and with the parties before it, and without consent to have made a decree to do justice and equity between these parties and

to fix the terms upon which the retained percentage should be paid and also to fix the terms upon which the work should be completed and paid for; or to assess damages to either party in case the other failed to do his part or perform the decree. We submit that a party cannot appear by his attorney, even though the appearance be made in the name of another, and contest and fight out a proposition and not be bound by what is done. He is as much estopped where he appears by his attorney in a case in another name as if that appearance had been in his own name, and this applies as well to municipal corporations and *quasi*-public corporations as to any ordinary litigant.

"One who has a right to make a defense, control the proceedings, examine and cross-examine witnesses and appeal from a judgment, though not technically a party to a judgment, may nevertheless have been so connected with it by his interest in the result of the litigation and by his active participation therein, as to be bound by such judgment. The courts look beyond the nominal parties and treat all those whose interests are involved in litigation, and who conduct or control the action and defense as real parties and hold them concluded by any judgment which may be rendered, as for example those who employ counsel in the case, assume the active management of the proceedings or defense, or who pay the cost and do such other things as are generally done by parties. In other words, by participating in the proceedings one is estopped by the judgment as to any question actually litigated and decided therein." (15 R. C. L., p. 1009, sec. 483). The above principle only applies to parties *sui juris.*

A consent judgment or decree is as much binding as where the case is tried out on its merits. *Blackbourne* v. *Senatobia Educational Assn.,* 74 Miss. 852. "Courts have the general power of entering judgment by consent of parties and a judgment may be properly entered by a court for the purpose of carrying out a settlement and compromise of a suit. When made by consent it is presumed to be made in view of existing facts and that these were

within the knowledge of the parties. 13 R. C. L., sec. 86, p. 643; *Thompson* v. *Maxwell Land Grant,* 95 U. S., 391, 24 L. Ed. 481.

An attorney of record in a court of general jurisdiction has the implied power to consent to a decree. 13 R. C. L., sec. 87, p. 644.

The second inquiry of the court is: The court desires to know under what statutes, state or federal, the alleged consent decree and contract thereby made is governed. We confess we do not know exactly what was in the mind of the court in propounding this inquiry. We do not think that the statutes, either state or federal, have anything to do with the rendering of this consent decree. If the court had jurisdiction of the subject-matters and the parties, unquestionably, it could enter a consent decree by virtue of the inherent power of the court. Of course a consent decree against a minor, or any other person not *sui juris,* would be void, but if the parties are *sui juris* and before the court, then a consent decree may be entered by the court just as effective and valid as if the matters had been litigated out and decided by the court.

The third inquiry says if we assume that the board of supervisors had authority to make a contract, such as the consent decree involved could it bind itself and bind the public without giving notice by advertisement and by an entry of an order on its minutes to let any particular contract that would in substance change a former valid contract. We do not think there was any new contract; or rather we think that the consent decree merely related to the subject-matter of the former contract. All the matters decided by the consent decree were involved in the first suit. The decre merely directed the carrying out of the mutual obligations of the parties under a former contract. The county and the road district as to the two and three-tenths miles of road had decided that they did not want this road built as a nine-foot road, and they were going to let this out as a twelve-foot road by proper publication. This was a question of settlement merely as directed

on the consent decree of the relative rights of the parties under the first contract and the damages that might accrue to either party by reason of the first contract not being carried out.

That would have been a legitimate inquiry if the matter had been litigated out instead of being settled by a consent decree. That consent decree is now being assailed collaterally, as we see it. There was no appeal from the consent decree. The bill and answer, on which the consent decree was founded is not before the court any further than the matter at issue was necessary to be set out in the new suit.

. We do not understand that it is necessary in order that a consent decree may be taken in a suit in which the county is involved that the board of supervisors should make an order on its minutes. The board of supervisors, as the representative of the county, as well as the attorney of the county, would have the power to enter a consent decree and if no fraud were practiced, the decree would be valid. It is generally held that a consent decree may be entered by an attorney without special authority and it will be binding upon his client, unless there is fraud or collusion, or mistake. (R. C. L., p. 644, sec. 87.)

We do not deny but that if the consent decree had been obtained by fraud, or by mistake, or that it really had not been by consent, or perhaps, if manifest gross injustice had been done, the court might, if it were attacked on this ground, vacate it; but there is nothing of this kind claimed in this case. The consent decree was manifestly fair and would manifestly dispose of the controversies between the parties in a just and equitable way, protecting the interests and rights of all parties to the transaction and as before stated, the fact of the order of the board of supervisors for the allowance of a part of the retained percentage and undertaking to keep the balance of the retained percentage by virtue of one of the clauses of the consent decree was an absolute ratification and approval of the con-

sent decree, by the county for and on behalf of the road district.

ETHRIDGE, J., delivered the opinion of the court.

The judgment appealed from in the present case was a proceeding brought upon a consent decree rendered in the chancery court of Alcorn county on the 22d day of August 1919, in a suit styled as this case is styled, in which original suit Carothers & Co. filed a bill against the commissioners of the Corinth to Gulf road district in Alcorn county, Miss., and the commissioners thereof, and the board of supervisors, in which it was sought to have a contract between Carothers & Co. and the board of supervisors and the road district commissioners specifically performed, and for a decree adjudging whether or not the board of supervisors had breached its contract with the said Carothers & Co., and whether the said Carothers & Co. were in default with reference to the said contract, and to compel the board of supervisors to pay over a certain retained percentage on the said contract to Carothers & Co. on a part of the work done by them upon said highway. The contract involved originally was for the construction of an improved highway, which was to be graveled for a width of nine feet with eight inches of gravel before the tamping of the gravel as provided in that contract.

It seems that the work in the original contract was interrupted by the government control of the railroads in its war activities, in which for a period of time gravel was prohibited from being carried over the railroads, and in which the contractors would have to bring the gravel from the pit to the road for the work. The suit was filed against the board of supervisors and the highway commissioners as such, and not against the county, and so is the present proceeding. The board of supervisors and the highway commission had filed an answer, and the case was at issue between the parties as before the court; the county not being technically

a party to the suit. Thereupon a decree was entered by
consent which was in effect a new contract widely dif·
ferent in its terms from the original contract and involved a
construction of a portion of the original highway embraced
in the first contract to a width of twelve feet of gravel
highway, said gravel was to be also eight inches in depth
before tamping, and that Carothers & Co. would enter
into bond to guarantee that a portion of the highway to
be constructed twelve feet in width with gravel laid as
above stated instead of nine feet, at a cost not to exceed
twice the amount for the graveling and hauling that was
allowed under the first contract for that service; and it
was further provided in the consent decree that this link
of road, which was two and three-tenths miles in length,
and which was to be embraced in the federal aid project,
would be let as a separate link, so that Carothers & Co.,
could bid thereon to protect their said guaranty, and that,
when the amount of road was constructed by Carothers
& Co. which it was agreed that they would construct under
the consent decree, the board would pay a certain amount
of the retained percentages for such work on entering
into the bond as aforesaid.    There were certain varia-
tions also on the amount of gravel that would be regarded
as a cubic yard under the consent decree from what it
was under the original contract.    There was no entry of
this consent decree upon the minutes of the board of su-
pervisors, nor was there any notice to contractors published
as to such contract, and it was provided that the chancery
court would retain jurisdiction of the cause to compel the
carrying out of the consent decree. · The consent decree is
too lengthy to set out in detail, and it is unnecessary to
set forth its provisions in detail.    Carothers & Co. failed
to complete the link of road to be constructed twelve feet
in width of gravel within the time contemplated, and before
it was completed the link involved in the government aid
project was let, and this project involved two and three-
tenths miles above mentioned, and there was no separate
advertising of the two and three-tenths miles in the notice,

nor was the two and three-tenths miles let as a separate
link as agreed to in the consent decree. When the notice
was published that the government aid project would be
let, it involved the letting of a link of road six miles in
length, and the advertisement was seen by a member of
the firm of Carothers & Co., and a member of that firm
attended the meeting at which that government aid pro-
ject was let, and had five hundred dollars to deposit as a
guaranty provided the two and three-tenths miles was let
so as to give Carothers & Co. the right to bid thereon sep-
arately for the hauling and spreading of the gravel. But
no request was made by him at the time that the said road
be let as a separate link, nor that it be let to him as a
separate item for the hauling and spreading of the gravel.
At that time the link of road which they were to com-
plete had not been completed, and no bond for two thou-
sand five hundred dollars was made, filed, or tendered by
Carothers & Co. and the six-mile link known as the govern-
ment aid project, which also included the two and three-
tenths miles above mentioned, was let to a third party at
a cost greater than twice the amount of the original con-
tract for the nine-foot gravel road. Thereafter Caroth-
ers & Co. completed the link which they were to complete
under the agreed decree and presented their claim to the
board of supervisors, who caused its highway engineer to
figure the cost under the contract let of graveling the two
and three-tenths mile link twelve feet wide and eight inches
deep, and from the calculation so made by the engineer
the board of supervisors deducted the extra cost involved
to the county from the retained percentages and paid to
Carothers & Co. the difference between the retained per-
centages and this amount, but refused to pay this amount.
Thereupon the petition was filed in this suit, being the orig-
inal suit with supplementary proceedings, to compel the
county to pay the balance of the retained percentages on
the theory that the board had breached its contract em-
bodied in its decree by not letting the link of road sepa-
rately, and that consequently Carothers & Co. were en-

titled to all of the retained percentages, and the chancellor decreed on the final hearing in accordance with Carothers & Co.'s contention, from which decree this appeal is prosecuted.

Some serious questions have arisen in the consideration of this cause, and it has given us some trouble. In the first place, the suit was brought against the board of supervisors and the highway commissioners. There is no provision in the statute for suit by or against the highway commissioners. They are mere agents or advisors of the board of supervisors and can do nothing without the consent and approval of the board of supervisors. The statute nowhere authorizes them to sue or be sued, and it is clear that the suit against them is improper inasmuch as they are the mere subordinates and agents of the board of supervisors. *Shell et al. Commissioners* v. *Monroe County*, 125 Miss. 562, 88 So. 162. So there is no authority for a suit against the commissioners, and they are improper parties. The statute (section 309, Code of 1906; section 3682, Hemingway's Code) authorizes the county to sue and be sued by its name. It does not authorize suits against counties to be brought against the board of supervisors as such. This was held in a case where the board brought a suit on behalf of a county in *National Surety Co.* v. *Board of Supervisors of Holmes County*, 120 Miss. 565, 81 So. 792, but on suggestion of error to that decision, reported in 120 Miss. 706, 83 So. 8, it was held that a suit brought in the name of the board of supervisors for the benefit of the county was merely a misnomer, and that, if the defendant failed to object thereto in the trial court, where proper amendment could be made, it is precluded from making such point on appeal. So under this authority it is doubtful whether the failure to bring suit against the county would avoid the decree if it were otherwise proper where the county appeared and contested the right of the complainant in the suit. It was probably its duty to raise the question so that an amendment could be made. We do not decide what effect such suit would have, as the judgment

will be reversed for another reason, and the cause will be remanded when proper amendments may be made.

It is clear in our minds that the consent decree was void, and the chancery court had no jurisdiction to enter such decree. Section 361, Code of 1906 (section 3734, Hemingway's Code), provides how contracts for public work shall be made in all cases not otherwise specifically provided for. There is no specific provision for a contract of the kind attempted to be made in this suit, and it falls under section 361, Code of 1906, and must be let in accordance with the provisions of law contained in that and the sections following it in the chapter on the board of supervisors. The chancery court has no jurisdiction to make contracts on behalf of the county, and contracts not made in accordance with law cannot bind the county even though the board of supervisors as individuals appear and consent for the chancery court to enter a contract upon its minutes. A board of supervisors in the matter of binding the public by contracts are limited by law and cannot in cases of this kind ignore the statutory restrictions. It is familiar learning that the board of supervisors can only contract by an order entered upon their minutes. *Leflore County* v. *Cannon*, 81 Miss. 334, 33 So. 81; *Benton County* v. *Patrick*, 54 Miss. 240; *Dixon* v. *Greene County*, 76 Miss. 794, 25 So. 665, in which case it was held that the board of supervisors cannot delegate their duties to other persons. The class of contracts which may be modified without advertisement and the limitations of that power are set forth in *Marion County* v. *Foxworth*, 83 Miss. 677, 36 So. 36. A contract by a county board of supervisors not made by an order spread on the minutes is invalid. *Northern Drainage District* v. *Bolivar County*, 111 Miss. 250, 71 So. 380. See, also, *Kidder* v. *McClanahan, Mayor, et al.*, 126 Miss. 179, 88 So. 508; *Smith County* v. *Mangum* (Miss.), 89 So. 913; *Bridges & Hill* v. *Clay County*, 58 Miss. 817; *Crump* v. *Board of Supervisors*, 52 Miss. 107.

In *Lamar County* v. *Tally & Mayson*, 116 Miss. 588, 77 So. 299, in which case it was held that a contract made by

a board of supervisors can only be varied, where it can be varied at all, by an order entered upon its minutes, it is also said that the board of supervisors are the trustees for the public, and it cannot delegate powers conferred upon them by law.  So the chancery court was without power to enter the consent decree, and such decree amounts to a nullity.  In section 3474, Code of 1906 (section 2812, Hemingway's Code), it is provided:

"An officer shall not' enter into any contract on behalf of the state, or any county, city, town, or village thereof, without being specially authorized thereto by law, or by an order of the board of supervisors or municipal authorities."

In *Groton Bridge & Mfg. Co.* v. *Warren County,* 80 Miss. 214, 31 So. 711, it was held that as to work of a kind there involved and here involved the board cannot be bound upon any implied contract, and that all contracts for such work must be made by the board as a board in open session and be evidenced by entry on its minutes.

In view of these statutes and decisions the consent decree was void, and the decree attempting to enforce it is likewise void, and must be reversed and remanded, with leave to the parties to make such amendments to the original proceedings as may be necessary to settle the differences between the contractors and the county.

*Reversed and remanded.*