608 So.2d 1240 (1992)
David RICHARDSON, J.L. McCullough, Karl Banks, J.S. Harris, Jr., Individually, and in Their Capacity as Supervisors of Madison County, Mississippi; and Tubb-Williamson, Inc.
v.
CANTON FARM EQUIPMENT, INC.
No. 89-CA-0217.
Supreme Court of Mississippi.
August 26, 1992.
*1242 C.R. Montgomery, Montgomery Smith-Vaniz & McGraw, Canton, Rebecca B. Cowan, Montgomery Smith-Vaniz & McGraw, Lee B. Agnew, Jr., Agnew & Associates, Thomas E. Royals, Royals Hartung & Davis, Jackson, for appellant.
Stanley F. Stater, III, Stater Law Office, Canton, for appellee.
Mike C. Moore, Atty. Gen., Larry E. Clark, Asst. Atty. Gen., Leslie Scott, Jackson, for amicus curiae.
En Banc.
ROBERTSON, Justice, for the court:

I.
This case makes its second appearance before the Court. What was only alleged before is now clear: ultimately, that the behavior of four members of the Madison County Board of Supervisors is what our state purchasing laws at their core were designed to prevent. Four times the Board of Supervisors advertised for bids for the purchase of two backhoes, and four times someone outbid the vendor the Supervisors were determined to buy from. Finally, the Supervisors, on a pretext, accepted the higher bid and purchased the backhoes they had in fact been using for some six months.
We hold the Supervisors liable for actual losses their conduct has caused the county, for penal damages, and other incidentals. We hold the vendor as well for all sums it received under the unauthorized contracts.
On cross-appeal, we hold the Supervisors liable for Plaintiffs' reasonable and necessary attorneys' fees and legal expenses.

II.
Formally, these proceedings date back to October 2, 1984, when Canton Farm Equipment, Inc. (sometimes "Canton"), Plaintiff below and Appellee here, filed its complaint in the Chancery Court of Madison County, Mississippi. Canton Farm Equipment is a Mississippi corporation, domiciled and having its principal place of business on Highway 22 West in Canton, Mississippi. The complaint names as Defendants, David Richardson, J.L. McCullough, Karl Banks and J.S. Harris, Jr., individually and in their capacity as duly elected and serving Supervisors of Madison County, Mississippi. These four Supervisors are Appellants here and are sometimes hereinafter referred to as "the Supervisors." Also named as a Defendant was Tubb-Williamson, Inc., (sometimes "T-W") 2700 Lakeland Drive, Jackson, Mississippi 39208, a corporation engaged in business as a heavy equipment dealer.
At some time on or before February 14, 1984, District Three Supervisor David Richardson went to the place of business of Tubb-Williamson, Inc., and arranged to have a Case backhoe delivered to his district. Shortly thereafter, a Tubb-Williamson salesman approached J.L. McCullough, District Five Supervisor, and, by late February or early March of 1984, a second backhoe had been delivered, this time to District Five.
For several months, Madison County used the two backhoes in Districts Three and Five respectively as though they had already been purchased. Finally, on April 19, 1984, the Board of Supervisors authorized advertisement for bids for the purchase of two backhoes, the bids to be received on May 18, 1984. Without question, Canton outbid Tubb-Williamson on both backhoes. The Supervisors, however, rejected these first bids because of "improper specifications" and ordered new bids to be submitted on June 15, 1984. Again, Canton had the low bid but, upon examination, it was discovered the specifications for District Three and District Five had been reversed, *1243 and this second set of bids was rejected.
The Board authorized a third advertisement for bids on the backhoes to be returned on July 27, 1984. This advertisement was made in a different newspaper than the first two advertisements. On this occasion, only one bid was received, that of Canton Farm Equipment. The Board took the bid under advisement and at a meeting on August 20, 1984, voted to reject it. On this occasion, the Board determined to switch to a cash purchase and adopted the following resolution:
WHEREAS, said bids were taken under advisement and after the discussion of said bid, Mr. Richardson motioned seconded by Mr. McCullough, that said bids be rejected for the lease-purchase method as advertised because both Supervisors now desire to make a cash purchase of said backhoes and the Board further directed the attorney, Mr. Montgomery, to pursue the legal alternatives to borrow the necessary funds for the cash purchase of said backhoes, and

Further, the Board directed the Clerk to re-advertise for the cash purchase of backhoes as prescribed by law, said advertisement to reas (sic) as follows, ... . (Emphasis supplied)
Pursuant to this resolution, the clerk prepared the advertisement for publication but neglected to provide that the Board was accepting only cash purchase bids. This advertisement was published on August 29, 1984, and on September 5, 1984, in the Twin-City Madison County Press. It stated as follows:
Notice is hereby given that the Board of Supervisors of Madison County, Mississippi, acting for and on behalf of all of the Supervisors District Number III of said county and state, will receive sealed bids at the Courthouse Annex in the Town of Canton, Mississippi, until 10:00 o'clock a.m. on Friday, the 14th day of September, 1984, for the lease purchase by it for and on behalf of the aforementioned Supervisor's Districts for the following described property or supplies to wit: ONE NEW OR SLIGHTLY USED RUBBERTIRED BACKHOE SPECIFIED AS FOLLOWS: .... (Emphasis supplied)
The advertisement for "two new or slightly used rubbertired backhoes" is understandable in that by this time, the two Tubb-Williamson backhoes had been in use by the Supervisors in Districts Three and Five for some six months.
At the time, no one noticed the discrepancy between the "lease" purchase advertisement and the minutes authorizing only a "cash" purchase. For District Three, the bids submitted for a 36 month lease purchase contract were:

Canton Ford Tractor
 [Canton Farm
 Equipment, Inc.] $885.29 per month
Tubb-Williamson Co. $888.70 per month

Canton was the apparent low bidder by some $3.41 per month.
For District Five, the bids submitted for a 36 month lease purchase contract were:

Canton Ford Tractor
 [Canton Farm
 Equipment, Inc.] $752.91 per month
Tubb-Williamson Co. $775.09 per month

Canton was the apparent low bidder by some $22.18 per month.
On September 24, 1984, the Supervisors considered the bids and, upon motion duly made and seconded, determined to accept the Tubb-Williamson lease purchase bid for each backhoe. The Supervisors' minutes acknowledged that "dollar-wise" Canton "submitted the lowest bid for each backhoe" but further recited that the bid would be awarded to Tubb-Williamson for five reasons: "(1) lower maintenance costs, (2) better quality equipment, (3) operators familiar with equipment, (4) equipment demonstrated and used on jobsite and (5) more durable equipment." See Miss. Code Ann. § 31-7-13(d) (Supp. 1991). Noticeably, the minutes do not suggest that the Canton bids failed to conform with specifications in the advertisement.
Understandably miffed, Canton immediately commenced this civil action by filing its complaint in the Chancery Court of *1244 Madison County, Mississippi.[1] In essence, Canton charged the Supervisors had engaged in a concerted course of conduct to acquire the Tubb-Williamson backhoes in disregard of statutorily-mandated purchasing requirements. See Miss. Code Ann. §§ 19-13-17 and 31-7-13 (Supp. 1991). The complaint demanded that the Supervisors reimburse the county for all sums illegally spent and that the Court assess penal damages and attorneys fees. Canton named Tubb-Williamson as well, demanding that the contracts of sale be held for naught. The matter was transferred to the Circuit Court of Madison County, Mississippi, which dismissed it on an assortment of preliminary grounds. On appeal, we held (1) the Circuit Court had subject matter jurisdiction, (2) the complaint stated a claim upon which relief could be granted, and (3) that Canton as both an aggrieved bidder and a taxpayer had standing to bring the action. Canton Farm Equipment v. Richardson, 501 So.2d 1098 (Miss. 1987) ("Canton I"). We remanded for further proceedings.
On Canton's motion, the Circuit Court entered partial summary judgment against the Supervisors and Tubb because the lease purchase bid advertisement was not authorized; hence, the Supervisors had no valid power to accept any bid, much less that of Tubb-Williamson. The Court later noted:
The minutes of said Board directed that the advertisement for bids for the purchase of the backhoes be for cash. This Court holds to this ruling and further rules that the said Board could not have legally accepted the bid of either bidder.
The Court thereafter enlarged the grounds of its ruling.
Tubb-Williamson, Inc. delivered the backhoes some six months before the acceptance of the bids... . [T]he Board advertised for the purchase of the backhoes four times. Each time dollar wise the plaintiff, Canton Farm Equipment, Inc., was the low bidder and on the third time was the only bidder. It was only after the fourth bid that the Board tried to justify the high bid dollar wise. This Court is not criticizing the reasons [as such] given for taking Tubb-Williamson, Inc.'s bid. This Court is of the opinion that the reasons given could be valid reasons, but looking at the whole picture, it appears that the Board of Supervisors was determined that Tubb-Williamson, Inc. be awarded the sale... .
The Court then made clear it rested its holding that the Tubb-Williamson bids and contracts were void not just on the technical discrepancy between the cash purchase minutes and the lease purchase advertisement.
This Court ... would have to have his head in the sand not to know that once road equipment is delivered to a supervisor's district prior to receiving the bid that the Board of Supervisors is going to see that the dealer who delivers the equipment is awarded the bid.
In fact this is so well known in the industry, there is seldom another bid submitted, not even a complimentary bid. The practice of delivering before bid letting destroys the purpose of requiring bids. This Court holds that Section 31-7-57 of our Code applies in this case and further holds that the defendants are liable for the full amount paid in connection with the backhoes.
In calculating actual or compensatory damages, the Circuit Court included every expenditure of county funds remotely related to the two ill-gotten backhoes.
The attorney for the Plaintiff will prepare a judgment against all the defendants, jointly and severally, in favor of Supervisor's District No. 3 of Madison County, Mississippi for the following:

 For backhoe -$31,993.20
 For attorney's fees -$ 5,980.47
 For repairs -$27,708.02
 For insurance -$ 1,429.89

and in favor of Supervisor's District No. 5 of Madison County, Mississippi for the following:

*1245
 For backhoe -$27,903.24
 For attorney's fees -$ 5,525.79
 For repairs -$ 9,582.49
 For insurance -$ 1,249.11

The Circuit Court then moved to Canton's demand that penal damages be assessed. Miss. Code Ann. §§ 19-13-37(1) and 31-7-57(1) (1972 and Supp. 1984). Noting that "the damages assessed as compensatory damages are considerable," the Court held "a nominal amount of penal damages is sufficient."
[I]t is the ruling of this Court that each of the Supervisors who are defendants in this case shall pay an additional ten dollars ($10.00); one half to go to each of the two beats.
Addressing the claims against Tubb-Williamson, the Circuit Court concluded
[S]ince Tubb-Williamson accepted the purchase price after the suit was filed, knowing or should have known that the sale was questionable, I am finding against Tubb-Williamson.
This led the Court to announce a final judgment in favor of the County of Madison and against all Defendants, jointly and severally, in the amount of $111,372.21, plus interest and costs.
Next came the matter of the backhoes. The Court had held void and of no effect Tubb-Williamson's sale and the Supervisors' purchase. In this state of things, the Court held:
Upon the payment of this judgment for compensatory damages in full the title of the two backhoes shall be assigned to the defendants in proportion that each defendant paid.
Finally, the Circuit Court denied Canton's plea for their reasonable attorneys fees and legal expenses made on grounds it had proceeded as a private attorney general and rendered a public service.
Supervisors Richard, McCullough, Banks and Harris and vendor Tubb-Williamson, Inc., now appeal to this Court. Canton cross-appeals the Court's denial of attorneys' fees and legal expenses.

III.
This record reeks of a resolve on the part of these four Supervisors to purchase the Tubb-Williamson backhoes, come what may. In the eyes of the law, however, their sins are procedural. Our Legislature has enacted a process designed to secure adequate equipment and facilities for the public while at once assuring that no more of the public treasury is expended than is reasonably necessary, all of which but takes account of human frailty and recognizes that Supervisors deal not with their own money, but with that of their constituents. Background law regarding the nature, authority, and prescribed modes for effective action of boards of supervisors undergirds the statutory bidding process.
Before proceeding, we need be clear of several facts which are not disputed. Back in 1984, Madison County needed a backhoe for use in Supervisor's District Three and another for use in Supervisor's District Five. Conversely, in the words of the Circuit Court:
The County received the benefit of the purchase of the backhoes and the County did not suffer any actual damages because of the unlawful purchase.
The T-W backhoes may well have been of better quality and more durable with lower maintenance costs, although we see nothing in this record denying the backhoes Canton proposed to sell the county met specifications. The point is, these Supervisors are said to have sinned, not in buying the T-W backhoes but in the way in which they went about it.
The Circuit Court found the Board's purchase of these two backhoes impermissible on two grounds. First, somewhat technically, the Board's minutes of August 20, 1984, had authorized advertisement for a cash purchase only, while in fact the Board, on September 24, 1984, accepted Tubb-Williamson's lease purchase bid. The Supervisors say this is insufficient grounds to hold them personally, that at most this required voiding the September 24, 1984, purchase and re-advertisement. They predicate their case on Miss. Code Ann. § 31-7-13 (Supp. *1246 1986)[2] which makes no mention of the terms of purchase  cash, time, lease purchase, or whatever.
The Supervisors ignore a background premise as simple as it is familiar: they may act and authorize bids and contracts only by orders and resolves formally adopted and entered on the minutes. Burt v. Calhoun, 231 So.2d 496, 499 (Miss. 1970); Corinth to Gulf Highway v. Carothers & Co., 129 Miss. 645, 649, 92 So. 696, 698 (1922); Smith County v. Mangum, 127 Miss. 192, 196, 89 So. 913 (1921); Northern Drainage District v. Bolivar County, 111 Miss. 250, 252, 71 So. 380, 381 (1916); Marion County v. Woulard, 77 Miss. 343, 345, 27 So. 619 (1900); Bridges v. Clay County, 58 Miss. 817, 819 (1881). The premise is more fundamental than the statutes it gives flesh and that are here at issue.
From a fair reading of the minutes of August 20, the Board authorized advertisement for bids on a cash purchase only basis. Lease purchase terms are different in that they contemplate the county becoming obligated to make an additional expenditure, the payment of interest or finance charges so long as and to the extent that the principal purchase price remains outstanding. The Board had no authority deriving from the August 20th minutes to accept a bid on terms other than those authorized. That the statute does not require the Board to purchase the equipment by a particular method of payment is beside the point. The Board had the option and authority to commit itself to a particular form of payment, and it exercised that authority and committed itself on August 20 to accept cash bids only. Having done this, the Board had no authority to accept bids on other terms, even though the published advertisement may have been mistaken. The Circuit Court correctly held the sale "illegal and void and without legal effect."
Second, and more fundamentally, the Circuit Court held that the Board had acted in a wholly bizarre manner. Finding that the Tubb-Williamson backhoes had been delivered some six months before acceptance of the bids, the Circuit Court said:
Looking at the whole picture, it appears that the Board of Supervisors was determined that Tubb-Williamson, Inc., be awarded the sale... .
and thereafter
The practice of delivery before bid letting destroys the purpose of requiring bids.
The Supervisors made hash of the bidding process by reason of which the Circuit Court correctly held the sales null and void. The Court went further and denied the Supervisors the right to use county funds to pay their attorneys' fees, and, in addition, assessed civil penalties under Sections 19-13-37(1) and 31-7-57(1), albeit in the modest sum of $10.00 each, the propriety of which we consider below. The essence of these rulings, considered in the aggregate, is that the Supervisors have acted in objective bad faith in their determination to circumvent the statutorily-prescribed bidding process and to purchase the Tubb-Williamson backhoes, no matter what. The evidence substantially supports such a finding.
For the moment, all of this is adequate that on both grounds we affirm the Circuit Court's holding that the Madison County's contract to purchase the two Tubb-Williamson backhoes was void and of no legal force or effect. Each purchase substantially departed from the statutory method of *1247 letting contracts. Miss. Code Ann. § 19-13-37 and 31-7-57 (1972). It is the latter of these grounds, the Supervisors' dogged denial of low bidder Canton, that we consider predicate to relief, to which we now turn.

IV.
The Circuit Court ordered these four Supervisors to repay Madison County the full amount of the purchase price of the backhoes, all costs expended by the county to insure and repair the backhoes, and all public monies they had expended for attorneys fees defending the suit. The Court acted exclusively on the authority of a single clause in Section 31-7-57(1), as it read in 1984. The Supervisors challenge all of this, and here it must be conceded there is difficulty.
A preliminary point need be made. We have held contracts for the sale of goods unenforceable and of no effect. In conventional circumstances, one would examine the law of contracts for a remedy. Here the legislature has intervened. At least insofar as the Supervisors are concerned, the legislature has provided the remedy supplanting the law of contracts. Put another way, the remedy to which these Supervisors are subject is a function of law and not formalistic logic.
In 1980, the legislature addressed generally any purchase or payment by any public official
contrary to or without complying with any statute of the State of Mississippi, regulating or prescribing the manner in which such contracts shall be let, payment on any contract made, [or] purchase made....
Miss. Laws, ch. 440, § 15 (1980). For officials offending this standard, the legislature authorized the court to assess
compensatory damages in such sum equal to the full amount of such unlawful contract, purchase, expenditure or payment.
Miss. Laws, ch. 440, § 15 (1980); codified as Miss. Code Ann. § 31-7-57(1) (Supp. 1984). These four Supervisors are clearly public officials covered by the 1980 enactment. Miss. Code Ann. § 31-7-1(b) (Rev. 1989).
The problem is that the Supervisors' offenses and the county's remedies were, at the time of the 1980 enactment, already covered by a separate statute, a statute Canton pleaded and the Circuit Court considered but ignored in the end. Section 19-13-37(1), addressed boards of supervisors specifically, and provided a liability standard identical to that in Section 31-7-57(1), circa 1984. For damages, however, actual loss was the measure. For procedurally illegal purchases, Section 19-13-37(1) required that supervisors, and the boards on which they serve, pay
compensatory damages, in such sum up to the full amount of such contract, purchase, expenditure or payment, as will fully and completely compensate and repay such public funds for any actual loss caused by such unlawful expenditure.
Miss. Laws, ch. 444, § 1 (1974), codified as noted as Miss. Code Ann. § 19-13-37(1) (Supp. 1984).
The Supervisors see a conflict in these statutes, in that Section 31-7-57 requires damages "equal to the full amount" of the unlawful contract, while Section 19-13-37(1) authorizes recovery only of actual loss up to the amount of the contract.[3] Not surprisingly, they argue Section 19-13-37(1) governs to the exclusion of Section 31-7-57(1). The point becomes important when we remember the Circuit Court's repeated finding "the County did not suffer any actual damages because of the unlawful purchase." This finding like any other is protected by the substantial evidence rule and may be set aside only if and to the extent that it be seen clearly erroneous. See e.g., Smith v. Dorsey, 599 So.2d 529, 533 (Miss. 1992); Will of McCaffrey v. Fortenberry, 592 So.2d 52, 60 (Miss. 1991); Culbreath v. Johnson, 427 So.2d 705, 707-09 (Miss. 1983).
*1248 The Supervisors argue Section 31-7-57 is a general statute applicable to all state and local officials, while Section 19-13-37 applies specifically and only to supervisors, then citing Lincoln County v. Entrican, 230 So.2d 801 (Miss. 1970), for the familiar rule that
where a special and particular statute deals with a special and particular subject, its particular terms as to the special subject control over general statutes dealing with the subject generally.
Lincoln County, 230 So.2d at 804. This special-over-general canon of construction is well settled in our law. See also, Benoit v. United Companies Mortgage of Mississippi, 504 So.2d 196, 198 (Miss. 1987); State ex rel. Pair v. Burroughs, 487 So.2d 220, 226 (Miss. 1986); McCaffrey's Food Market, Inc. v. Mississippi Milk Commission, 227 So.2d 459, 463 (Miss. 1969); Greaves v. Hinds County, 166 Miss. 89, 100, 145 So. 900, 901 (1933); White v. Lowry, 162 Miss. 751, 758, 139 So. 874, 876 (1932). It does not seem, however, to apply here, and the reason it does not apply is we have no statute that much more special or particular than the other. It is true, Section 19-13-37(1) by its express terms at the time covered "the individual members of all boards of supervisors," as well as others. But Section 31-7-57(1) did essentially the same, as we there find coverage of "the individual members of any ... governing authority as defined in Section 31-7-1," with Section 31-7-1 then defining "governing authority" to include "boards of supervisors." See Miss. Laws, ch. 440, § 1 (1980); ch. 306, § 1 (1981); ch. 488, § 152 (1984), codified as Miss. Code Ann. § 31-7-1(b) (Rev. 1990). This seen, we seek other means to resolve the facial difference in the two statutes.
The history is of value. The antecedent to Section 19-13-37 was first codified in the Code of 1871 and was carried forward without change into the Code of 1972. It provided:
If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person who is a taxpayer suing for the use of the county, and such taxpayer shall be liable for cost in such case.
This statute addressed substance, not procedure. Paxton v. Baum, 59 Miss. 531 (1882), held that recovery against individual supervisors was limited to funds appropriated to an object not authorized by law.
It is for a diversion of money from its legitimate objects, and not for appropriation to a proper object, although in an irregular or unauthorized manner, that liability is imposed on members personally.
Paxton, 59 Miss. at 536. This reading has been accepted through a long line of cases, including State Ex Rel. Summer v. Denton, 382 So.2d 461, 464-65 (Miss. 1980), and most recently in Smith v. Dorsey, 599 So.2d at 544-45.
Entrican v. King, 289 So.2d 913 (Miss. 1974), began today's line of thought. Conventionally, Entrican explained:
Since Paxton, this Court has held, in several cases involving expenditures of public funds where such expenditures were devoted to lawful objects, the public sustained no loss, the officer making them did not profit personally as the result, and no statute imposed personal liability upon the officer, that the officer is not personally liable, although such expenditures were made in an unauthorized or prohibited manner.
Entrican, 289 So.2d at 915. Significantly, we added:
Unless the Legislature has expressed, in clear terms, in a statutory enactment, an intention to impose personal liability as a penalty in circumstances such as those in the present case, it must be concluded that it was intended that the common law should prevail and no personal liability should result.
Entrican, 289 So.2d at 916.
Whether the legislature regard this an invitation, we are not sure. See State Ex Rel. Summer v. Denton, 382 So.2d at 465. What we do know is within a few months *1249 of Entrican, the legislature enacted Miss. Laws, ch. 444 (1974), which specifically amended Section 19-13-37 to give us the text the Supervisors rely on. The amendment provided that members of boards of supervisors, and others, who caused public funds to be expended or contracts to be let or payments to be made without complying with any statute regulating or prescribing the manner in which such actions were to be carried out, were to
be liable, individually, and upon their official bond, for compensatory damages, in such sum up to the full amount of such contract, purchase, expenditure or payment, as will fully and completely compensate and repay such public funds for any actual loss caused by such unlawful expenditure.
Chapter 444 went on to provide for penal damages, that any such official who substantially departed from the statutory method for letting contracts, making payments, purchases or expending public funds should be liable individually and on his bond for further penal damages of up to $5,000.00.
At that moment, Section 19-13-37(1), as Chapter 444 had amended it, provided the lone rule regarding the damages issue that vexes us today. Rather than fill the void Entrican had noted, Chapter 444 proved a Hydra which divided and grew two heads, as the Keepers of the Mississippi Code  upon what authority is not clear  carved out a new code section, being Section 31-7-57. Until this time, Section 31-7-57 had no existence. This new section, as noted, plowed the same ground as the 1974 amendment and covered individual members of any governing authority, defined in Section 31-7-1 to include members of boards of supervisors. The measure of damages to be recovered and the provisions for penal damages of up to $5,000.00 were identical in both sections. The new Section 31-7-57(1) simply mirrored Section 19-13-37(1). The codifiers had taken Chapter 444 and produced two essentially identical statutes, placing one in Title 19, Counties and County Officers, Chapter 13, Contracts, Claims and Transaction of Business With Counties, and the other in Title 31, Public Business, Bonds and Obligations, Chapter 7, Public Purchases.
The Hydra's two heads coexisted peacefully until 1980. Section 31-7-57's damages prescription then metamorphosed to authorize courts to hold offending officials
for compensatory damages in such sum equal to the full amount of such unlawful contract, purchase, expenditure or payment. (Emphasis added.)
Miss. Laws, ch. 440, § 15 (1980). The $5,000.00 additional penalty authority was left unchanged. A further amendment in 1981 added another section in the form of a preface to Section 31-7-57 but did not change any existing language. Today's dilemma is created by antagonistic phraseology in amended Section 31-7-57(1) and by the legislature's failure to touch Section 19-13-37(1), which retained its actual damages standard.
For what it may be worth, when the legislature amended Section 31-7-57(1) in 1980, the bill did not include the somewhat standard next-to-last section:
Any statute or part thereof in conflict with this act is repealed to the extent of such conflict.
The bill did repeal a number of statutes, one of which was even in Title 19, chapter 13.[4] All of this negates any notion the enactment repealed or amended Section 19-13-37(1) by implication or otherwise.
The final chapter is after the fact. By 1988, it had become apparent Sections 19-13-37(1) and 31-7-57(1) covered (some of) the same officials and proscribed the same conduct, but authorized compensatory damages with differing language arguably with important differences in legal meaning. *1250 The legislature opted to retain the actual damages standard and did so by amending Section 31-7-57, so that it now provides
for compensatory damages, in such sum up to the full amount of such contract, purchase, expenditure or payment as will fully and completely compensate and repay such public funds for any actual loss caused by such unlawful expenditure.
Miss. Laws, ch. 14, § 68 (Ex.Sess. 1988), codified as Miss. Code Ann. § 31-7-57(3) (rev. 1990). Section 19-13-37 was simply repealed. Miss. Laws, ch. 14, § 74 (Ex.Sess. 1988). The statutory law on this point is once again what it was before January 1, 1981. Our case, unfortunately, arose during the interregnum.
The history noted, return to the facial conflict between the two statutes, as they read in 1984. For one thing, we know of nothing that prohibits the legislature acting twice regarding a particular course of conduct it wishes proscribed. And so in the criminal field we have allowed, when this occurs, the prosecution to elect between the two statutes and, if it wishes, prosecute for the offense carrying the greater penalty. See, e.g., Weaver v. State, 497 So.2d 1089, 1093 (Miss. 1986). In any event, where two statutes address the same subject matter, our first duty is to see if they may be reconciled and, if not fully harmonious one with the other, at least accommodated so that unequivocal language is not wholly ignored. See Roberts v. Mississippi Republican Party State Executive Committee, 465 So.2d 1050, 1052 (Miss. 1985); Bridges v. Barr, 245 Miss. 137, 141-42, 146 So.2d 544, 545 (1962); Board of Supervisors of Lauderdale County v. City of Meridian, 149 Miss. 139, 149, 114 So. 803, 805 (1927). Even where, as here, there may be a technical conflict in the language, it is our duty to read the entire text of both statutes objectively and together and attribute to them the meaning most coherent in principle which best accommodates the whole, best fits the texts, and flows most naturally from the best justification an external observer may find for the statutory scheme so assembled, given its political history. See Simmons v. Bank of Mississippi, 593 So.2d 40, 43 (Miss. 1992); Burrell v. Mississippi State Tax Commission, 536 So.2d 848, 855 (Miss. 1988); Mississippi Insurance Guaranty Association v. Vaughn, 529 So.2d 540, 542 (Miss. 1988); Warren County v. Culkin, 497 So.2d 433, 436 (Miss. 1986).
There is no getting around the fact that an isolated phrase in Section 31-7-57(1), as it read at the time of these violations, provided for damages "equal to the full amount of such unlawful contract, purchase, expenditure or payment," though it labels those damages "compensatory damages," nor is there any escape from the fact that Section 19-13-37(1) employed a liability standard for boards of supervisors identical to Section 31-7-57(1)'s and provided, instead, for damages only in the amount of losses actually sustained by the counties.
Seeking to resolve the conflict, without dishonoring the constructive principles just noted, we find Section 31-7-57(1)'s measure of damages preceded by the phrase "for compensatory damages," as though the "sum equal to the full amount ..." would be compensatory damages. What is odd about this, of course, is that compensatory damages are ordinarily thought otherwise. Compensatory damages are such damages
as will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury.
Black's Law Dictionary, 352 (5th Ed. 1979); see also, The Southland Co. v. Aaron, 224 Miss. 780, 787, 80 So.2d 823, 826 (1955); Lee v. Southern Home Sites Corp., 429 F.2d 290, 293 (5th Cir.1970). Of course, the legislature has power to define a term or phrase as it sees fit. See, e.g., Mississippi State Tax Commission v. Moselle Fuel Co., 568 So.2d 720, 723 (Miss. 1990). Absent expressed definition to the contrary, phrases such as "compensatory damages" are to be given their common and ordinary meaning. Miss. Code Ann. § 1-3-65 (1972); Davis v. State, 586 So.2d 817, 820 (Miss. *1251 1991); Wilson v. Wilson, 547 So.2d 803, 805 (Miss. 1989). Defining "compensatory damages" as the full amount of the contract is wholly at odds with the way the phrase is commonly understood, although the label should ordinarily give way to the substance that follows. See, e.g., Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990).
This leaves us with our combined text including Section 19-13-37(1)'s clear prescription for actual damages only and with Section 31-7-57(1) using a label that means actual damages, only followed by language suggesting a different standard ordinarily labeled by lawyers "liquidated damages," "a penalty," or some such. The suggestion of a literal and isolated reading of "in such sum equal to the full amount of ..." is further embarrassed by the enactment in 1988 deleting that language and embracing Section 19-13-37(1)'s actual-damages-only standard, the one and only standard until the 1980 enactment of Chapter 440, thus remerging the two statutes that had been one since 1871, until they divided in 1974 for reasons not made clear. In a variety of contexts, we have held post-event amendments among the available aids to interpretation of statutory language, see, e.g., Ryals v. Pigott, 580 So.2d 1140, 1153 (Miss. 1990); Wansley v. First National Bank of Vicksburg, 566 So.2d 1218, 1222-23 (Miss. 1990); Grant Center Hospital v. Health Group of Jackson, Inc., 528 So.2d 804, 809 (Miss. 1988), particularly where the state seeks enforcement of a repealed or amended statute against a citizen or, as here, against a public official in his individual capacity. See e.g., State ex rel. Pittman v. Ladner, 512 So.2d 1271, 1274-77 (Miss. 1987); Crosby v. Barr, 198 So.2d 571, 574 (Miss. 1967).
Notwithstanding, we are told that a failure to read Section 31-7-57 to require assessment of damages equal to the amount of the contract could result in minimal damage awards for egregious violations, with the attendant consequence that the law would possess no deterrent capacity. Here we enter the arena of value judgments and legislative primacy, although if, altogether, the applicable statutes require what has been ordered, we should not flinch. But when we look at the entire statutory scheme, as it existed in 1984, we see further penalties provided, and severe ones at that. In addition to making the county whole for its actual damages, both statutes empower the court to assess "penal damages" in an amount "up to the sum of $5,000.00," Miss. Code Ann. § 31-7-57(3), and Section 19-13-37(2) (Supp. 1984). Beyond this, the statutes authorize fine and/or imprisonment and/or removal from office. Miss. Code Ann. § 31-7-55(1) (Supp. 1984). We think this a full panoply of public remedies, consistent with public interest, if compensatory damages be limited to actual damages.
These things said, we hold the best reading of all of this law is that it limits the compensatory damages that may be assessed individually against these Supervisors for these procedural offenses to the actual loss Madison County has sustained.[5] The Circuit Court erred when it held otherwise. By reason of their offense to the law in the manner of letting these two bids to Tubb-Williamson, Inc., these Supervisors may be held for that sum as will fully and completely "compensate and repay such public funds for any actual loss caused by such unlawful expenditure." Miss. Code Ann. § 19-13-37(1) (Supp. 1984). The Supervisors argue the county suffered no actual damage, and the Circuit Court certainly so found. In support the Supervisors reason the two districts had the use of the backhoes, a use they say should be valued at a fair rental value for the hours used. They couple this with a consideration of the present "as is" value of each backhoe and compare it with the purchase price for the District Three backhoe of $31,993.20 and that for the District Five backhoe of $27,903.24, and say it may readily be seen the county "did not suffer any actual damages *1252 as result of the Board's accepting the lease purchase bids submitted by Tubb-Williamson."
The Supervisors neglect to note that, in the case of the District Three backhoe, Canton Farm Equipment was the apparent low bidder by $3.41 per month, and on the District Five backhoe by $22.18 per month, that if the Board had, in fact, accepted Canton's bids (assuming it legally could), it would have had to pay at the price Canton bid. In this view, Madison County may well have suffered actual loss, albeit in the somewhat modest difference between the Tubb-Williamson bid which was accepted and the lower Canton bid. Then there is the matter of interest or finance charges on the lease purchase contract (which are economically real and recoverable though hidden in the monthly lease payments).
Since the August 20, 1984, minutes authorized only acceptance of bids on a cash basis, the finance charge expenditures are without authorization and must be repaid. To this extent, the Circuit Court clearly erred when it held the county had suffered no actual damages.
On the other hand, we do not see the cost of repairs to the equipment nor the cost of insuring the equipment as losses to the county. Nobody questions that Districts Three and Five needed a backhoe. Purchasing backhoes is something Supervisors may do, if only they pursue prescribed procedures. If the Board had accepted bids from Canton Farm Equipment, it would still have had to insure the equipment and pay all reasonable and necessary repairs. Nothing before us suggests the Tubb-Williamson equipment was sub-standard. Indeed, the Board found the Tubb equipment to be of better quality and more durable with lower maintenance, and these findings are in no way expressly refuted. The Circuit Court said the "repair bills seem excessive" but, without proof, they could not be held illegal.
In sum, we hold, under a combined reading of Sections 19-13-37(1) and 31-7-57(1), the liability of these four Supervisors for compensatory damages shall be (a) all amounts of principal payment over and above the sums that would have been required under the Canton Farm Equipment bids, (b) all sums expended for interest, finance charges and related costs, and (c) any other sums as may be necessary to "fully and completely compensate and repay ... [the coffers of Madison County] for any actual loss caused by such unlawful expenditure."

V.
The Supervisors appeal the penalties the Circuit Court assessed. It will be recalled Sections 19-13-37(1) and 31-7-57(1) in identical language authorize "penal damages" may be assessed against a Supervisor who "substantially departs" from the legally authorized procedure for letting contracts and purchasing equipment. These penalties may not exceed $5,000.00. The Circuit Court found these Supervisors had "substantially departed" the law but assessed only nominal penal damages of Ten Dollars ($10.00) per Supervisor, with half of each penalty to be paid to District Three and the other half to District Five.
The Supervisors argue the evidence does not show "substantial departure," the statutory predicate to penal damages. We are directed to the testimony of the several Supervisors. J.S. Harris called the cash-bid-authorization/lease-purchase advertisement fiasco "a clerical, human, unintended mistake." Karl Banks said he was unaware of the problem when he voted to accept the Tubb-Williamson lease purchase bid. J.L. McCullough testified in a similar vein. These notes are appointed with vague conclusory argument the Supervisors acted without intent or bad faith.
What the Supervisors' appeal fails to see is the Circuit Court's award of penal damages was not predicated on the cash-bid-authorization/lease-purchase-advertisement problem. The Court was moved by these Supervisors' apparent determination to buy the Tubb-Williamson backhoes and the bidding laws be damned.
[L]ooking at the whole picture, it appears that the Board of Supervisors was determined that Tubb-Williamson, Inc. be awarded the sale.
*1253 Later the Court said of these Supervisors' course of conduct that it "destroys the purpose of requiring bids." We need not repeat the facts set out in Part II, except to recall the revealing reasons the Supervisors gave for rejecting Canton's fourth straight low bid: "(3) operators familiar with equipment and (4) equipment demonstrated and used on job-site." The August 20, 1984, fourth-time-around Board minutes had been altered to authorize advertisements for two new "or slightly used" backhoes. After all, by this time the county's "operators" had been using this equipment "on job-site" for some six months.
The Circuit Court refused to put its "head in the sand," and we similarly refrain. There is more than substantial evidence that these four Supervisors substantially departed from lawful bidding processes. The Circuit Court was well within its authority and the evidence when it ordered penal damages.
A further point should be noted. The Circuit Court explained it was assessing only nominal penal damages because its compensatory damages assessment had been rather hefty. The Court added:
However, if the Supreme Court should determine that since there were no actual damages that there would be no compensatory damages, this Court would reconsider the penal damages.
In point of fact, Canton has not cross-appealed the quantum of penal damages. The issue implied in the Circuit Court's comments is not before us. Rule 28(a)(3), Miss.Sup.Ct.Rules. We do not think it inappropriate to note the Circuit Court pursued a dubious course, and we do not wish to be understood to sanction the practice of withholding full penal damages assessment until it is known how this Court on appeal will adjudge other issues in the case.

VI.
There is the matter of attorneys' fees for defense of this action. The Circuit Court found damages against the four Supervisors for sums expended by them as attorneys fees in defending their action. These sums were $5,980.47 arising from the case of the District Three backhoe, and $5,525.79 regarding the District Five backhoe. The Court ordered that the Supervisors repay these sums to Madison County.
Without doubt, supervisors are empowered to employ counsel and defend themselves when sued in causes arising out of their official position whether they be sued in their official capacity, individually, or both. See, e.g., Miss. Code Ann. §§ 19-3-47 and 25-1-47 (1972). Public officials are often public targets, and this is a price we are willing to pay, lest the prospect of lawsuits deter solvent citizens from seeking public office. Where they have a colorable defense and present the same in good faith, Supervisors pay expenses of defense out of the public coffers, notwithstanding an adverse judgment. This right coexists on principle with the board members' qualified official immunity from suit regarding acts within their discretionary authority. See Barrett v. Miller, 599 So.2d 559, 567 (Miss. 1992); Starnes v. City of Vardaman, 580 So.2d 733, 737-38 (Miss. 1991); Grantham v. Mississippi Department of Corrections, 522 So.2d 219, 223-25 (Miss. 1988).
On the other hand, where there is no reasonable basis for a defense and/or where the board members proceed in bad faith, they act ultra vires and have no power to expend public funds for defense. In such cases, the court should order that any such defense be at their own expense and that any public funds expended be reimbursed. Of course, there may be cases where the defense is in part bona fide and in part otherwise, and it may be difficult of precise mathematical calculation what dollar amount of defense is attributable to what part of the defense.
Here, it is hard to understand on what basis the Supervisors may reasonably have thought they might defend their giving the bid to Tubb-Williamson in the way they did so, assuming even that the Tubb-Williamson equipment may in fact be superior. At no point has any Supervisor claimed the Canton equipment was inadequate or that its bid failed to conform with the specifications. This record, viewed as a whole, reveals *1254 but a single reasonable interpretation and that is that these Supervisors were determined to purchase the Tubb-Williamson equipment, notwithstanding that the law allowed such only through certain reasonable and carefully prescribed procedures. In short, we find no basis for a reasonable holding that the Board defended on the liability phase of this case in good faith. We think it not unfair to add that the Supervisors resisted liability and asserted every kind of technical defense one might imagine, see Canton I, supra, and thus exacerbated the expense to the county.
Moreover, as we have held, the Court was within its authority in assessing these Supervisors with "penal damages." There was here a substantial departure "from the statutory method of letting contracts," both technically with respect to the agreement to pay finance charges when cash bids only have been authorized and more substantively when the Supervisors determined to pay for more expensive equipment than what was offered under another bona fide bid. The fact that the Court assessed each Supervisor only $10.00 in penal damages is of no moment. The holding, in any event, on the liability phase of the penalty claim supports our decision that this action in substantial part was indefensible.
Notwithstanding this, it is now clear Canton was seeking on behalf of Madison County compensatory damages in excess of those allowed by law and, indeed, the Circuit Court awarded damages beyond what was allowed, as we have held above. These Supervisors were justified in resisting the demand that they repay the entire contract price, all repair costs and insurance. Under the circumstances, we hold that these Supervisors, jointly and severally, are liable to repay to Madison County one half of all attorneys fees and legal expenses paid out of the county's coffers for the defense of this action, through and including the costs of the present appeal. We hold further, beginning this moment, the Supervisors may not cause to be paid from the treasury of Madison County or the Districts they serve, any attorneys fees or legal expenses incurred in any additional proceedings here or below on remand.

VII.
The Circuit Court entered judgment in favor of the County of Madison in the sum of $111,372.21  the four Supervisors and, in addition, Tubb-Williamson, Inc.
Tubb-Williamson appeals separately and argues for reversal on a number of grounds. To begin with, we find it somewhat bizarre that parts of the principal judgment be charged to Tubb-Williamson. How T-W might be held for the attorneys' fees the Supervisors paid to defend the action escapes us. Nor is it particularly apparent why T-W should have to reimburse the county for premiums for insurance the Supervisors purchased to protect the county's interest. The Circuit Court grumbled the repair bills "seem excessive" (we presume T-W handled repairs) but acknowledged it could not so hold without proof which was not forthcoming. We think it so.
T-W's appeal at its core is premised on the statutes we have considered above and particularly on Section 31-7-57. We are told the statute provides a special scheme of remedies against offending public officials, to the exclusion of vendors who are not mentioned. As there is no statute authorizing a remedy against vendors, T-W must be exonerated, or so the argument goes.
We take a different view. Canton sued to have the contracts of sale from T-W to Madison County declared illegal and void. Canton has carried the day. We have held the two contracts void ab initio and of no force or effect. If they are void as to the county, so that the Supervisors are liable for damages occasioned thereby, it would be hard to see how they may be yet enforceable by T-W. If the Board of Supervisors failed to follow required bid purchase procedures so that the county never became bound, it seems only sensible to say T-W had no deal either. Assuming arguendo T-W acted in good faith, that may not create an enforceable contract *1255 with a purchaser who acted without authority, nor does it matter that the purchaser's defaults were matters of intra-board procedures.
All of this may suggest T-W should be held on terms that mirror the Supervisors' liability for compensatory damages. There is another dimension, and it is important. The integrity of the simultaneous, secret, competitive bidding system is at stake. If we hold T-W only to reimburse the county for those sums it paid over and above the low bid, we give T-W and other vendors who may be similarly situated a wholly unfair advantage over their competitors. Allowing T-W to escape with such relatively limited damages has the effect of extending to T-W a right to a second bid, a right to meet the competition, a right of first refusal, if you will. This will not do.
We have held vendors responsible for assuring that their contracts with local government are lawfully made. Thompson v. Jones County Community Hospital, 352 So.2d 795, 797 (Miss. 1977); Burt v. Calhoun, 231 So.2d 496, 499 (Miss. 1970). The principle extends to cases such as this. The cash-purchase-authorization/lease-purchase-advertisement -and-bid-acceptance is just as fatal to T-W as to the Supervisors, and the same may be said of the fact that the Supervisors illegally accepted a bid that was not shown to be the lowest and best bid. Accordingly, we hold T-W had no enforceable contracts with Madison County and no right to receive any monies under either of its purported contracts of sale. T-W is liable to reimburse the county for all sums so received, but that is all.
There are three caveats to this holding. T-W gets its backhoes back. To be sure, these two backhoes are more than just "slightly used" by this time. T-W may well suffer a substantial loss which, if its brief and argument are to be believed, is not its fault. It may well be that, to the extent it is held to repay the county, T-W may seek indemnity of and from the Supervisors said to have caused the loss. Nothing said here should be taken to hold T-W has an indemnity claim, that it would prevail upon trial, or that the Supervisors would have no defenses. To ameliorate any apparent harshness in our holding T-W to reimburse the county, we merely note there is law that protects those in the position T-W says it is in. Third, to the extent they would order repayment of sales price or time purchase interest or finance charges, the judgment against T-W and the Supervisors remains joint and several. In such circumstances, of course, Madison County may have but one recovery. See Towner v. State Ex Rel. Moore, 604 So.2d 1093, 1097 (Miss. 1992).

VIII.
On cross-appeal, Canton urges that the Circuit Court erred when it denied Canton's motion for an award of attorneys' fees. Canton points out that it has brought this action as a "private attorney general," that it has prosecuted the matter through a myriad of preliminary procedural snares and traps, followed by trial on the merits only after this Court had cleared away the procedural minefield in Canton I. It is within our actual and judicial knowledge that Canton has pursued this litigation for more than five years and has presented the matter doggedly and competently in the face of substantial obstacles. Now on its second appeal to this Court, Canton notes that, if the judgment below is affirmed to any substantial extent, it will have brought to justice wrongdoers without any material benefit to itself and at great personal expense.
The Circuit Court denied Canton's request for attorneys' fees, but it is clear it did so because it thought it had no authority to make such an award. The Circuit Court recognized:
It might be that a person acting as a private attorney general should be reimbursed for attorneys fees.
In the end, the Circuit Court denied Canton's request because "the statute [Section 31-7-57] does not mention attorneys fees."
It is certainly true that in the great majority of instances where this Court has considered requests for attorneys' fees, the Court has acted on the basis of statutory authority. We have long recognized, however, *1256 that a trial court may award attorneys' fees where the evidence is such that it justifies an award of punitive damages. See, e.g., Defenbaugh and Company of Leland, Inc. v. Rogers, 543 So.2d 1164, 1167 (Miss. 1989); Central Bank of Mississippi v. Butler, 517 So.2d 507, 512 (Miss. 1987); Grisham v. Hinton, 490 So.2d 1201, 1205 (Miss. 1986); Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797, 801 (Miss. 1979).
The Circuit Court's holding that the Supervisors should be assessed penal damages was the functional equivalent of an assessment of punitive damages. That the assessment was modest does not embarrass the premise one bit. In Smith v. Dorsey, supra, the Court had before it a substantially analogous circumstance in which school board members had authorized illegal contracts. In addition to awarding compensatory damages, the trial court in Smith assessed one dollar in punitive damages and then ordered that the defendant school board members pay the plaintiffs' reasonable attorneys' fees. This Court affirmed, stating:
We find no abuse of discretion in the Chancery Court's allowance of all fees in this case. We consider this case to be the classic public interest lawsuit, where the plaintiffs at great trouble and expense have rendered an invaluable public service by bringing the wrongdoers to account.
Smith, 599 So.2d at 550.
A like case is Pearl River Valley Water Supply District v. Hinds County, 445 So.2d 1330 (Miss. 1984). An equally divided Court upheld the lower court's authority to award plaintiffs their reasonable attorneys fees. Justice Hawkins offered the rationale for our doing so.
Funds and assets were preserved for the benefit of all five counties ... The plaintiff counties have rendered an incalculable service to all five counties. As a result of their suit, they will be stopping bad management, the waste and dispersion of public funds ... To saddle the two plaintiff counties with all the fees after rendering services which would be of immeasurable benefit to all counties is repugnant.
Pearl River, 445 So.2d at 1361. With but slight editing, this language would fit quite well the case at bar. Because the Circuit Court found grounds for, and in fact assessed, penal damages, the Court had authority, in its discretion, to consider an award of attorneys' fees.
In cases where attorneys' fees are allowable, we have articulated general criteria that ought be considered regarding both award and quantum. McKee v. McKee, 418 So.2d 764 (Miss. 1982), is an oft-cited case. We there held the fee depends, inter alia, upon
the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the question at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
McKee, 418 So.2d at 767; see also, Rule 1.5(a), Mississippi Rules of Professional Conduct (1987); Carter v. Clegg, 557 So.2d 1187, 1192-93 (Miss. 1990); Karenina By Vronsky v. Presley, 526 So.2d 518, 525 (Miss. 1988); Marx v. Truck Renting & Leasing Assoc., 520 So.2d 1333, 1351 (Miss. 1987).

IX.
On direct appeal, we affirm the judgment of the Circuit Court that the contracts of purchase and sale of the two backhoes are null and void and of no legal effect. We vacate the award of compensatory damages against all Defendants and remand to the Circuit Court for a new trial on compensatory damages, consistent with this opinion. We affirm the assessment of penal damages against the Supervisor Defendants. We vacate the order that the Supervisors repay to Madison County attorneys' fees expended in defense and direct on remand that the Circuit Court order reimbursement for only one-half of all reasonable and necessary attorneys fees and legal *1257 expenses incurred through and including this day, consistent with this opinion.
On cross-appeal, we reverse the judgment of the Circuit Court and remand the case for further proceedings regarding Canton's plea for an assessment against the Supervisors of reasonable attorneys fees and legal expenses, all consistent with this opinion and legal principles applicable thereto.
ON DIRECT APPEAL OF DAVID RICHARDSON, J.L. McCULLOUGH, KARL BANKS, AND J.S. HARRIS, JR., INDIVIDUALLY AND IN THEIR CAPACITY AS SUPERVISORS OF MADISON COUNTY, MISSISSIPPI, AFFIRMED IN PART AND REVERSED IN PART; ON APPEAL OF TUBB-WILLIAMSON, INC., REVERSED AND RENDERED; ON CROSS-APPEAL OF CANTON FARM EQUIPMENT, INC., REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., PRATHER and SULLIVAN, JJ., concur.
DAN M. LEE, P.J., concurs on all points except Sections VIII, and files a separate opinion dissenting on section VIII.
McRAE, J., concurs in Sections I, II, III, part of Section IV, Sections V, VII, and VIII, but dissents as to part of Section IV and to Section VI and files a separate dissenting opinion, joined by HAWKINS, P.J.
PITTMAN and BANKS, JJ., not participating.
DAN M. LEE, Presiding Justice, concurring in part and dissenting in part:
I concur in the results reached by the majority in Parts I-VII. However, I am unable to agree with Part VIII of the opinion which allows Canton Farm Equipment, Inc. to recover attorneys' fees as "a private attorney general." There are no "private attorneys general." The majority supports its holding by an analogy to Smith v. Dorsey, 599 So.2d 529 (Miss. 1992). However, in Smith v. Dorsey there was no competitor involved. To allow and extend recovery of attorneys' fees beyond public interest lawsuits where neither the attorney general nor other public agency is involved is a dangerous and open-ended road to embark upon.
I note with similar alarm that while Section 31-7-57 of the Mississippi Code Annotated (1972) does not mention attorneys' fees, the majority concludes that a court may nonetheless award attorneys' fees if a penalty could be imposed. The majority likens this to cases wherein punitive damages are awarded. I, in no way, concur in the majority's statement that, "assessed penal damages [are] certainly the functional equivalent of an assessment of punitive damages." To the contrary, the statute calls for penal damages when a public official "substantially" departs from the statutory method of letting contracts. By contrast punitive damages generally require conduct more culpable than "substantial departure."
In authorizing attorney's fees without statutory authority, this Court ventures into uncharted and treacherous waters. It will produce lamentable results.
Therefore, I must respectfully dissent from Part VIII of the majority opinion.
McRAE, Justice, concurring in part/dissenting in part:
I concur in the results only. However, because the majority does not assess all compensatory damages that the county may have lost, I write separately.
The majority found that the contract was void ab initio and further held:
On the other hand, we do not see the cost of repairs to the equipment nor the cost of insuring the equipment as losses to the county. If the Board had accepted bids from Canton Farm Equipment, it would still have had to insure the equipment and pay all reasonable and necessary repairs. Nothing before us suggests the Tubb-Williamson equipment was sub-standard.
The problem with this reasoning is that the contract was void ab initio and it remains the private property of Tubb-Williamson. The county cannot make repairs to private property. As we stated in Saxon *1258 v. Harvey, 190 So.2d 901, 906 (Miss. 1966), there is nothing in Miss. Const. Art. 6, Sec. 170 or those statutes which enumerate the powers of county supervisors "which contemplates or condones the use of public equipment, materials, or labor upon private projects." See also Coleman v. Shipp, 223 Miss. 516, 532, 78 So.2d 778 (1955). Because we are dealing with private property, if the contract was void ab initio, the costs of any repairs to this equipment would be the responsibility of the supervisors. Likewise, the supervisors are liable for the cost of the insurance, particularly the comprehensive and collision policies, which covered Tubb-Williamson's private property.
I further disagree with the majority opinion concerning the attorneys' fees and feel that in this case, all reasonable attorneys' fees and expenses should be assessed against the supervisors. Since the majority held the contract was void, I feel that the individual supervisors should pay all attorneys' fees and expenses, including the prosecution of this appeal.
HAWKINS, P.J., joins this opinion.
NOTES
[1] The fifth supervisor, P.H. Luckett, was not named as a defendant, presumably because he voted against acceptance of the Tubb-Williamson bid. See Miss. Code Ann. §§ 19-13-37(1) and 31-7-57(5) (1972 and Supp. 1984).
[2] Miss. Code Ann. § 31-7-13(c) (Supp. 1984) provided:

Purchases which involve an expenditure of more than Two Thousand Five Hundred Dollars ($2,500.00) may be made from the lowest and best bidder after advertising for competitive sealed bids once each week for two (2) consecutive weeks in a regular newspaper published in the county or municipality in which such agency or governing authority is located, and, further, that the date as published for the bid opening shall not be less than five (5) working days after the last published notice. Said notice of intention to let contracts or purchase equipment shall state the time and place at which bids shall be received, a list of contracts to be made, or types or equipment or supplies to be purchased, and if all plans and/or specifications are not published, will refer to the plans and/or specifications on file....
[3] This conflict, of course, was present at the time of Canton I. We gave it no thought or attention because the issues we addressed there seemed far removed. See Canton I, 501 So.2d at 1104, 1106, fn. 9.
[4] Miss. Laws, ch. 440 (1980), concludes with:

Section 28. Sections 31-7-25, 31-7-27, 31-7-29, 31-7-31, 31-7-33, 31-7-35, 31-7-37, 31-7-39, 31-7-41, 31-7-43, 31-7-45, 31-7-48, 31-7-67, 31-7-69, 31-7-71, XX-XX-XXX, 37-39-3, 37-39-7, 37-39-9, 37-39-11, 37-39-13, 51-7-37 and 65-7-103, Mississippi Code of 1972, are hereby repealed.
Section 29. This act shall take effect and be in force from and after January 1, 1981.
Approved: May 5, 1980
[5] The similarities and contrasts between this view, and the law's treatment of official expenditures to an object not allowed by law, must be kept well in mind. Actual loss will often equal the full amount of the contract price where the monies go to a forbidden object. Smith v. Dorsey, 599 So.2d 529, 533-49 (Miss. 1992).